## Reaney *versus* Culbertson.

1. By an agreement in writing the plaintiffs agreed to build a high-pressure engine of the first class, to be delivered at a time designated. The plaintiffs were to " find one man to put up said engine and stay with it two weeks after completion." The defendants were " to furnish all such help as may be required by our man for the putting of said engine and boilers in operation."

It was *Held*, 1. That the construction of the contract was for the Court and not for the jury. 2. That it was not obligatory on the plaintiffs to direct the construction of the foundations of the mill or walls of the building for which the engine was intended.

2. A principal is liable for the act of his agent only when the latter is acting within the scope of his authority; and if the agent of the plaintiffs for the special purpose of putting the engine in operation was consulted by the defendants as to the construction of the walls of the building, the plaintiffs are not answerable for his mistakes in respect to the latter.

3. The defendants were entitled to a deduction from the price of the engine for loss sustained by stoppage of the mill occasioned by defects in the construction of the engine—also for loss occasioned by their hands being unemployed from the same cause.

ERROR to the Common Pleas of *Union county.*

This was an action of assumpsit by Reaney, Neafie, and Levey, as partners, *v.* John Culbertson, Benjamin Griffey, and Charles Gudykunst, founded on two promissory notes, dated September 2, 1851; one for $637.50, at four months, on which was endorsed a credit of $500.00 on 28th January, 1852; and the other for $337.50, at six months. The plea was, payment with leave; and, subsequently, set-off.

The plaintiffs were manufacturers of steam-engines, in Philadelphia. In February, 1851, two of the defendants applied to them for a steam-engine for a saw-mill, and a written agreement was entered into, which was as follows: " Memorandum of an agreement entered into this 22d day of February, A. D. 1851, by and between James Culbertson and Benjamin Griffey, of the first part, and Reaney, Neafie & Co. of the second part, viz.: The parties of the second part agree and bind themselves to build or cause to be built, one horizontal high-pressure engine of the first class—cylinder 12¼ inch bore, 36 inch stroke; with 3 cylinder boilers, 30 inch diameter, 30 feet long; fire front, grate bars, smoke stack, and cast-iron plate for pipe, and everything complete, of the best material and workmanship, delivered on board a boat at our wharf in

six to seven weeks from date. *The parties of the second part to find one man to put up said engine, and stay with it two weeks after completion. The parties of the first part to pay all expenses of getting said engine to its destination, and risk of same, and to furnish all such help as may be required by our man for the putting of said engine and boilers in operation,* and to find the man with good and comfortable board and lodging at their expense. The parties of the first part agree and bind themselves that they will pay, or cause to be paid, $2550 in the following manner : One-fourth when said engine is shipped in Philadelphia; one-fourth when said engine is started; the balance in two negotiable notes, one at four months, the other at six months, dated from last payment.''

On the part of the plaintiffs it was alleged that, in pursuance of the agreement, the plaintiffs had an engine constructed, which, it was said on their part, was finished a short time after the time fixed in the agreement; but that owing to a break in the canal, the engine did not reach its place of destination (which is near where Clinton county joins Union) for some weeks. That the plaintiffs sent a man (Mr. Kirk) to superintend the putting up of the engine. Before his arrival the masonry had been commenced. That Mr. Griffey, one of the defendants, was a millwright, and had a draft. The engine was put up, and the plaintiffs' agent remained with it for two weeks. That the defendants were called on for the money and notes mentioned in the agreement, when they claimed a deduction on account of the engine not having arrived in time. To this Reaney, one of the plaintiffs, objected; but at length, for the purpose of having the matter settled, he consented to a deduction of $300, and executed a paper to that effect, in which it was stated, that if some small articles which defendants found fault with, proved defective, the plaintiffs would furnish others when notified. Some money was paid, and notes given for the balance. That the defendants paid $500 on one of the notes. It was afterwards alleged on the part of the defendants, that the engine was not made according to contract, and that the foundations were not properly constructed. Suit was brought on the notes.

On the trial, on the part of the defendants it was offered to prove (*inter alia*) that the heater pipes bursted, in consequence of which the mill was stopped some time; and it was also offered to prove the damage sustained in consequence of the saw-mill standing idle for some time; also to prove the expense of reconstructing the walls on which the machine had been placed. To this the plaintiffs' counsel objected; but the Court overruled the objection and admitted the evidence.

On part of the plaintiffs, points were submitted as follows :

1. That under the agreement of 22d February, 1851, the plain-

[Reaney v. Culbertson.]

tiffs were not bound to superintend the putting up of the foundation for the engine and boilers.

2. The plaintiffs were not bound to direct the manner of constructing the foundation walls.

3. That the defendants were not entitled to a deduction for loss sustained in consequence of the mill standing idle.

4. That if any part of the machinery was defective, it was the duty of the defendants to give the plaintiffs notice of the defect in a reasonable time, and if they failed to do so, they cannot be relieved from payment.

In answer to the first exception, WILSON, J., charged the jury, *inter alia*, that the agreement was that the plaintiffs shall find one man to put up the engine. It does not specify the work to be done or attended to by the man putting it up, and what would be required of the person superintending the putting of it up will depend on what you shall find was necessary under the agreement. If it was the mere setting up of the engine and boilers properly on the foundation, in order to put the machinery in operation, and not the superintending of the building of the foundation, for any defect or damage in consequence of mal-construction of the foundation, the plaintiffs would not be answerable; and under the evidence in this case we submit it to you whether the plaintiffs were or were not bound to superintend the putting up the foundation for the engine and boilers.

In the answer to the second point he declined to say there was no evidence that the plaintiffs were not bound to direct the mode and manner of construction of the foundation walls, but that question was left to the jury to say under the evidence, whether it was provided for by the agreement of the parties; and that this must depend not alone on the agreement itself, but what was the duty of the man sent by the makers to put the engine in operation, as to which a resort was had by the parties to oral testimony.

To the *third* point he answered, that the question as to deduction depended on whether the jury find that the mill stood idle in consequence of the deficiency or construction of any part of the work that was to have been done by the plaintiffs. If so, the law would not be as here stated. But if otherwise, the plaintiffs would not be answerable.

As to the fourth point, he charged that though the defendants did not give notice of defect in machinery, they would still be entitled to a deduction from the price for what would be reasonable for the deficiency of the machine and the construction of the work which the plaintiffs had undertaken.

May 27, 1753, verdict was rendered for plaintiffs for $137.50.

On the trial, various bills of exception to the admission of evi-

[Reaney *v.* Culbertson.]

dence were taken on part of the plaintiffs. The first bill related to an offer on part of the defendants to prove certain facts stated in the notice of special matter, which related to alleged defects in the machinery, and that it was put up by the plaintiffs imperfectly, and that in consequence expense was incurred by the defendants, and injury sustained from delay. The objection on part of plaintiffs was overruled.

According to the 2d bill, the offer was to prove that one of the defendants objected to the plaintiffs' agent locating the heater where it was located. The Court gave leave to prove the objection made, and the reply of the agent. 3d bill. That in consequence of the piston head having broken, and the heater pipes bursting, the defendants were compelled to stop the mill for about ten days. It was objected to as not set out in the notice of special matter, and as not admissible on the trial of the issue. It was admitted as growing out of the transaction.

4th. The offer was to prove how many persons the defendants had in their employ when the mill was stopped, and whether they continued in their employ till the mill was put in operation.

5th. The offer was to prove what would be the cost, and expense of taking down the engine and boiler and re-setting the same in a proper and workmanlike manner. This was offered to show the damage sustained by the defendants in consequence of the breach of contract by the plaintiffs, and to show that nothing is due by the defendants. Plaintiffs objected, 1. Plaintiffs had nothing to do with putting up the walls. 2. That the damage, if any, was sustained in consequence of the misconstruction of *the walls*, and cannot be set off in this action. 3. Is irrelevant. Objection overruled, and plaintiffs' counsel excepted.

The first five assignments of error related to the admission of the evidence referred to in the five bills of exceptions. The sixth was to the answer to the *first* point submitted, and the 7th, 8th, and 9th were to the answers to the other points in numerical order.

*Miller*, for plaintiff in error.—As to the 1st, 3d, 4th, and 5th bills of exceptions, it was observed that the Court permitted the defendants to show that in consequence of part of the machinery breaking, the mill was idle for some time, and also the number of hands employed at the time, and the expense of resetting the engine and boiler; but it was said that the difficulty occurred from the foundation walls giving way, which caused the engine to get out of its proper place. It was said that the primary end of damages is compensation, but not for every injurious consequence that may have been suffered: 2 *Harris* 97. It was contended that the plaintiffs had nothing to do *with the construction of the walls.*

[Reaney *v.* Culbertson.]

As to the points, it was contended that there was no ambiguity in the agreement, and no parol evidence to vary or change it was given, and that the Court should have given it a legal construction : 3 *Bin.* 327 ; 7 *Ser. & R.* 372 ; 4 *Id.* 279 ; 8 *Id.* 381 ; 15 *Id.* 100 ; 3 *Harris* 74. It was error to submit to the jury to decide as to the construction of the foundation.

*Pollock,* for defendants.—It was said that the delay in the delivery of the engine was not owing to a breach in the canal—that the engine was to have been ready for delivery in April, but was not ready till August, and that the failure caused inconvenience and loss to the defendants. But it was said that the dispute on that account was arranged.

It was said that the engine was not as good as was contracted for, and required repairing. In this action the defendants seek some compensation by way of defence and set-off. The evidence referred to in the 1st, 3d, 4th, and 5th bills of exceptions related to the loss occasioned by the deficiency of the engine : the money expended in having it repaired, in re-setting it, and in paying hands during the time the mill was not in operation, viz. the natural consequences of the plaintiff's failure to fulfil their contract. The profits which the defendants might have made if the mill had been in operation were not claimed. They were not bound to discharge their hands at the risk of losing them. The measure of damages is not always the difference between the value of the article in a sound, and in an unsound state. The rule is to give actual compensation by graduating the amount of the damage to the extent of the loss : 2 *Harris* 97, Forsyth *v.* Palmer. The defendants in this case did not claim for any injurious consequence as loss of property, inconvenience, trouble, &c., but for actual loss and injury. As to the question of damages was also cited 3 *Harris* 242–5 ; 2 *Id.* 294 ; 6 *W. & Ser.* 150.

As to the answers to points : It was said that "the plaintiffs were to find one man to put up said engine." The defendants were "to furnish all such help as may be required by our man for the putting of said engine and boilers in operation." What was necessary to be done, and what work and labor are involved in putting up an engine, are questions *of fact;* and it was contended that the Court was right in referring to the jury, under the evidence, to determine what the plaintiffs were to do in putting up the engine and boilers, and putting them in operation. The agreement requires that "a *first class*" engine be furnished, and it was submitted whether it was the province of the Court to give a legal construction to those words.

It was said that the proper construction of the foundation for the engine, and the walls enclosing the boilers, was essential to

[Reaney *v.* Culbertson.]

the proper putting up of the engine and boilers; and it was contended that it was as much the duty of the plaintiff's agent to have this rightly done, as it was to see that the pipes and joints of the engine were properly placed and fitted.

As to the *third* point, it was observed that the proof of actual loss during the time the mill was idle, was proper to be considered by the jury: 2 *Harris* 294.

As to the fourth point, it was observed that the question of *notice* did not arise, as the engine was retained by the defendants. The recission of the contract was not asked, but damages for loss occasioned by the failure of the plaintiffs to perform their agreement.

The opinion of the Court was delivered, September 8, by

WOODWARD, J.—The fundamental error in this record consisted in referring to the jury the construction of the agreement of the 22d February, 1851. That led to the erroneous admission of the evidence in the fifth bill of exceptions, and to the exceptionable instructions of the Court on the measure of damages.

The plaintiffs called on the Court to say that, under the agreement, they "were not bound to superintend the putting up of the foundations for the engine and boilers." This raised a question of construction, which according to all the authorities was for the Court and not for the jury. And, in our apprehension, there was no difficulty in the question. Reaney, Neafie & Co. bound themselves to construct an engine of specified dimensions and character, and "to find one man to put up said engine, and to stay with it two weeks after completion." Culbertson, Griffey and Gudykunst, the parties of the first part, agreed, among other things, "to furnish all such help as may be required by our man *for the putting of said engine and boilers in operation.*" We suppose that these provisions interpret each other; that the putting up said engine, and putting said engine and boilers in operation, are equivalent expressions, and that neither of them include the construction of the foundations any more than the building which was to contain the engine. And that this was the understanding of the parties is shown by the draft which was furnished, and by the fact that the foundation of the boilers was commenced by the parties of the first part, before Mr. Kirk, the agent of the parties of the second part, had arrived.

Any man, with a draft of the engine and boilers before him, could lay out the foundations, and the building them was the work of a mason. Doubtless their permanence would affect the running of the engine; but if the defendants intended the plaintiffs should be responsible for the masonry, they should have put it into the agreement, and then left the plaintiffs to select their masons, and

[Reancy v. Culbertson.]

to determine the depth and size of the walls. From the tenor of the contract, and from the conduct of the parties, we entertain no doubt that the erection of the foundation and side walls—all that was properly masonry—belonged to the defendants to do, and if defectively done it was their misfortune, which, under the. agreement, they have no right to charge against the plaintiffs.

The Court ought so to have instructed the jury, and of course to have excluded all consideration of damages resulting from defective masonry. After Kirk's arrival, he advised about the walls; but, as the agent of the defendants, he could bind them only whilst acting within the sphere of his authority. If the plaintiffs sent him there to put the engine and boilers in operation, what he did in performance of *that* duty was their act. If, being there for that purpose, the defendants consulted him, or allowed him to direct about the walls, the plaintiffs are no more responsible for his mistakes in this regard than they would be for the mistakes of the masons employed by the defendants.

We consider none of the exceptions or errors sustained, save those which relate to the foundation and side walls, and therefore dismiss them without special remark.

> The judgment is reversed, and a *venire de novo* awarded.