# Grim *versus* Bonnell.

1. In an action for goods sold, the plaintiff testified that defendant said, "if he concluded to take them he would have George come there and tell us so; give us the order." This did not prove that defendant had authorized George to act as his agent to buy the goods, nor justify the admission of the evidence of his statements.

2. An agent may prove his authority when by parol, but his declarations *in pais* are not proof of it.

3. An agent's declarations may be evidence against his principal as part of *res gestæ*, if made in conducting his agency, after the evidence has established his authority to speak for his principal.

4. George told plaintiff that defendant had concluded to take the goods, and gave plaintiff a memorandum to ship the goods to defendant, to whom George was indebted. Defendant testified that he had given no order for the goods. Evidence that at the time of the delivery of the goods to defendant he said he had bought them from George and gave him credit on his books for the price, was admissible.

5. Declarations, to become part of the *res gestæ*, must have been made at the time of the act done.

[Grim v. Bonnell.]

March 17th 1875.   Before AGNEW, C. J., SHARSWOOD, WIL-
LIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Northampton county* :
No. 67, to January Term 1875.

This was an action of assumpsit, brought October 13th 1873, by
Alexander Bonnell against Jacob L. Grim, to recover the price of
grain which the plaintiff claimed that the defendant had bought
from him, through the defendant's agent.   The question was,
whether the grain had been bought from the plaintiff or from the
alleged agent.

The case was tried September 24th 1874, before Kirkpatrick,
P. J.

The plaintiff gave in evidence, an entry in his books, charging
defendant as follows :—

October 11th 1872.   100 bags containing 200 bushels
                        wheat at $1.69       .     .     . $338
                     100 bags wheat screenings at $1.25   125
                     ½ weighing      .     .     .     .      1

J. Gurnee, who was in the employ of plaintiff, testified that in
October 1872 the defendant and George Wenner were at the store
of plaintiff in New York ; they examined his wheat and talked
about prices ; plaintiff said he would not buy then ; if he made up
his mind to buy he would leave the order with Wenner ; would
leave instructions with him whether to buy or not ; defendant and
Wenner talked about 100 bags of wheat and 100 bags of screen-
ings.   When defendant was called on by witness to settle the bill,
he said he had settled with Wenner who owed him, that he had
bought the wheat of Wenner, and had given him credit on his
books.

Plaintiff testified : that defendant and Wenner were at his store ;
Wenner said plaintiff wished to buy about a car-load of wheat and
wheat screenings ; plaintiff tried to sell to him ; he said he wished
to look around a little ; if he concluded to take he would " have
Wenner tell the plaintiff. give the order ;" a day or two after-
wards, Wenner saw the plaintiff and said defendant had concluded
to take a car-load of wheat and screenings, and gave an order to
plaintiff to ship it to Freemansburg, with the prices marked as they
had been given to defendant.

It was then proposed to ask plaintiff: " What did George
Wenner say to you when he gave you this memorandum about the
time when the grain must be paid by Grim ?"

The question was objected to as incompetent, unless connected
with authority from defendant to make declarations as to the time
of payment.

The court admitted the question as put, and sealed a bill of ex-
ceptions.

[Grim *v.* Bonnell.]

Plaintiff testified that he asked about pay, and said thirty days was too long; Wenner said defendant would pay it in twenty days; he could pay then as well as any other time; plaintiff said he would ship the goods.   When defendant and Wenner were at the store, the quantity was spoken of by Wenner; all three talked together. Wenner did not ask to purchase on his own account.   Wenner was then in plaintiff's debt and was insolvent; plaintiff would not have sold him two bushels of wheat; plaintiff sent the wheat to defendant, in consequence of his saying that he would leave word with Wenner for plaintiff.

Plaintiff then offered in evidence the memorandum given to him by Wenner, viz. :

" $167 and Cartage
             125 for Screenings

"J. L. GRIM.

             100 Bgs Wheat

Freemans Burg Penn

             100 Bgs Screenings

New Jersey Central
20 Day time to pay."

It was objected to by the defendant, on the ground that there was no proof that the paper was written by defendant or authorized by him.

The court admitted the offer and sealed a bill of exceptions.

The defendant testified : that Wenner owed him since 1872 the sum of $921.50 ; that the debt had not been paid.   Wenner was in business in New York, and told defendant when he demanded payment that if he wanted grain he would sell it to him, he had no money ; he went with defendant to plaintiff's store; plaintiff asked defendant if he could sell him a car-load of the screenings; defendant said " No !" Plaintiff then said, " You had better leave your order."   Defendant replied he would see, and left the store. He further testified : " I did not give any authority in that store to buy any grain for me ; I did not at any time give him any order in writing, or by word of mouth, to buy any grain for me."

Defendant was then asked the following questions:—

" Did you subsequently buy the grain in controversy of George Wenner at your mill in Saucon township in this county, and give him credit for the amount on your books ?"

Defendant proposed to ask another witness:—

" Did you hear George Wenner say, on or about the middle of October 1872, to Grim, ' I have a car-load of grain at Freemansburg; unload it and give me credit on your books' ?"

Defendant offered in evidence the following letter from Wenner to defendant, Wenner being a resident of New York, and beyond the process of the court.

[Grim *v.* Bonnell.]

" Reading, Oct. 18th '72.

Sir: If a bill does come from Mr. Bonnell I bought the stuff on twenty days. Will pay it. Will not hurt you any if you get a bill. It was the best I could do. Now take the grain and say nothing. I will do the best I can.  ·       Yours,

GEO. WENNER."

Also, the day-book of defendant, showing credits of the grain in favor of George Wenner, October 18th 1872.

Each of these offers was objected to as *res inter alios acta*, rejected by the court, and several bills of exception sealed.

The defendant's seventh point, with its answer, was:—

" If the jury believe there was a bonâ fide sale between Grim and Wenner, that Grim paid for the goods by crediting Wenner with the amount of his bill, and that Grim retained the goods in good faith, believing that he had bought them and paid for them in the regular course of trade, it is their duty to find a verdict in favor of the defendant."

Answer. " This point is denied, as having no material application under the evidence."

The verdict was for the plaintiff for $526.92.

The defendant sued out a writ of error, and assigned for error :

1, 2. Admitting the plaintiff's offers of evidence, which were objected to.

3–6. Rejecting the defendant's offers of evidence.

7. The refusal of defendant's seventh point.

*W. E. Doster* and *H. Green* for plaintiff in error.—An agent may prove his own authority when by parol, but his declarations, *in pais*, are not proof of it: Jordan *v.* Stewart, 11 Harris 247 ; Clark *v.* Baker, 2 Wharton 340 ; Chambers *v.* Davis, 3 Id. 44. Defendant had a right to give whatever evidence he could to show that he had acquired the goods by a bonâ fide purchase from Wenner : Gerrish *v.* Chartier, 1 M., Gr. & Scott 13.

*B. F. Fackenthall,* for defendant in error.

Mr. Justice WOODWARD delivered the opinion of the court, May 10th 1875.

At the point which had been reached in the trial of this cause, when the declarations of George Wenner were admitted in evidence, there had been no proof to warrant the assumption that he had ever been authorized to act as agent for the defendant. The witness Gurnee and the plaintiff had sworn, that Wenner and the defendant had been together at the plaintiff's store, and that some negotiation was had for the purchase of grain. The defendant declined to buy, and in leaving, he said, according to the statement

of Gurnee, " if he made up his mind to buy, he would leave the order with Mr. Wenner; he would leave instructions with Mr. Wenner whether to buy or not;" or, as stated by the plaintiff, " if he concluded to take it, he would have George come there and tell us so ; give us the order." This evidence did not justify the admission of proof of the statements of Wenner. Such proof was entitled to be received only on the theory that he had been authorized to contract for the grain on behalf of the defendant as his agent, and there had been nothing to show that a word had passed between them on the subject after they left the plaintiff's store. Indeed, throughout the trial, there was nothing to indicate the existence of an agency, except what could be implied from the declaration of Wenner in his conversation with the plaintiff. " An agent is competent to prove his own authority when it is by parol, but his declarations *in pais* are not proof of it; and though they become evidence as part of the *res gestœ*, if made in the conduct of the business intrusted to him, yet other evidence must first establish his authority to speak before his words. shall bind his principal:" Jordan *v.* Stewart, 11 Harris 244. Agency cannot be proved by the declarations of the agent without oath, and in the absence of the party to be affected by them: Clark *v.* Baker, 2 Whart. 340 : Chambers *v.* Davis, 3 Id. 44.

The memorandum which the plaintiff testified he received from Wenner when the contract for the grain was made, was also improperly admitted. The record does not show in whose hand-writing the memorandum was. It may or may not have been in Wenner's, but that is indifferent, for it could only have been made competent evidence by proof, either that the defendant had written it, or that he had authorized Wenner to act as his agent. ˙ The first and second specifications of error are sustained.

The testimony specified in the third, fourth and sixth assignments of error should have been received. The defendant had sworn that he had given no order, verbal or written, for the grain purchased from the plaintiff. Wenner was indebted to him in a sum exceeding $900. When the car load of grain was bought, the plaintiff had been requested to ship it to the defendant. The offer was to prove that at the time of the delivery, the defendant bought the grain of Wenner, and gave him a credit on his books for the amount which had been agreed upon as its price, and that Wenner had said about the middle of October 1872, that he had a car load of grain at Freemansburg, and had requested the defendant to unload it and give him credit on his books. The defendant's day-book was offered to show the fact that the credit was given on the 18th of October 1872. Now, keeping in view the defendant's positive denial of any authority in Wenner to bind him, there was nothing in the position of the parties at the point of time to which these offers related, to create a motive to fabri-

[Grim v. Bonnell.]

cate testimony or falsify facts. The grain had been bought by Wenner in the name of the defendant, and he was selling it as his own. It had been shipped, but the letter of the plaintiff demanding payment had not been received. How could the evidence offered be treated as *res inter alios ?* It would have explained the defendant's possession of the grain. By the plaintiff's case, he stood charged with obtaining and holding another man's property, and with refusing to pay for it. Why could he not show that he had taken it in payment of a debt ? The proposition was to lay the exact character of the transaction before the jury. All the items of evidence embraced in the three offers, were *res gestæ,* for they were cotemporaneous with a material fact in the cause— the delivery of the grain—and were so connected with it as to illustrate its character. It was error to reject them.

The rejection of the letter of Wenner, to which the fifth assignment relates, was right. It was sent from Reading, and although dated on the 18th of October 1872, must be presumed to have been received after the delivery had been accomplished. Declarations, to become part of the *res gestæ,* must have been made at the time of the act done which they are supposed to characterize, and calculated to unfold the nature and quality of the facts they were intended to explain: Enos *v.* Tuttle, 3 Conn. 250. So far from harmonizing with the other testimony offered, the letter introduced an element entirely inconsistent and in conflict with it. If the fact which it disclosed, that the grain had been bought in his name had been brought to his notice before delivery, it is to be assumed that the defendant would not have accepted it. The letter would have been admissible only as the act of a participant in a combination by Wenner with the plaintiff to defraud the defendant, and not the slightest suggestion of the existence of such a combination has been made throughout the cause.

There was no such error in the answer of the court below to the defendant's point, as, of itself, to require a reversal of the judgment. The statements proved to have been made by the defendant in his conversation with Gurnee, were *some* evidence that he had bought the grain of Wenner and had credited him with its price. By the rigid rejection of the other testimony, however, they stood alone, and, without any corroboration, they can scarcely be held to have amounted to proof substantial and significant enough to have supported a verdict.

Judgment reversed, and a *venire facias de novo* awarded.