B. & O. EMPLOYEES' REL. ASS'N v. W. B. POST.

ERROR TO THE COURT OF COMMON PLEAS OF WASHINGTON
COUNTY.

| 122 | 579 |
|-----|------|
| 208 | 2466 |
| 122 | 579 |
| 211 | 541 |
| 122 | 579 |
| f221 | 2537 |

Argued October 15, 1888—Decided October 29, 1888.

1. Where the rules of a railroad employees' relief association authorize
the dues of members to be collected by stoppage out of their monthly
pay by the railroad company, the declarations of a paymaster that a
deduction has been made from an employee's pay are insufficient to es-
tablish the membership of the latter in the association.

2. An agent's authority cannot be shown by proof of his declarations;
and, in order that a party who will avail himself of the act of an agent
may prove his declarations, to bind his principal, the burden lies upon
him to prove the authority under which the agent acted, and that the
declarations were within its limits.

3. But the paymaster of a railroad company, who is but a mere servant,
with no discretion and with no duties to perform that are not purely
ministerial, is not an agent of the railroad company, much less of an
employees' relief association, so as to bind either by his declarations re-
lating to a past occurrence.

4. It is error, in an action against such association to recover weekly ben-
efits as a member, to exclude the testimony of the medical examiner
that the plaintiff's application had been stopped in witness's hands, and
plaintiff had never been accepted as a member of the association.

5. In such an action, the measure of damages, if any are recoverable,
being the stipulated sum the plaintiff would be entitled to, under the
charter and by-laws of the association, up to the time when the writ issu-
ed, an offer of proof of the plaintiff's expectation of life is irrelevant.

6. The phrase, total inability to labor, in the constitution and laws of
such an association, must be held to mean a total inability to earn a
livelihood at any employment, and not restricted to a particular trade
or the employment in which a member is engaged at the time of his
injury.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK
and HAND, JJ.; WILLIAMS, J., absent.

No. 41 October Term 1888, Sup. Ct.; court below, No. 166
June Term 1884, C. P.

On April 18, 1884, William B. Post brought an action
against The Balt. & O. Employees' Relief Association, declar-
ing in a narr filed on March 16, 1886, that in the "month of
December, 1882, said plaintiff being in the employment of the

Baltimore & Ohio Railroad Company as the conductor of a gravel train, at the direction of said Baltimore & Ohio Railroad Company, made application to the Baltimore & Ohio Employees' Relief Association, defendant, for the benefits accruing to membership in that association; and Whereas, in January, 1883, said Baltimore & Ohio Employees' Relief Association, defendant, demanded and received from him (the plaintiff) the usual, proper and customary assessment upon his wages as employee of said Baltimore & Ohio Railroad Company, whereby he became entitled to have and receive from said defendant the benefits offered and secured by said defendant to persons in his grade of service in the employment of said Baltimore & Ohio Railroad Company, in case of accident or injury; and Whereas, subsequently, to wit, on February 7, 1883, the plaintiff in the course of his employment aforesaid in the service of said Baltimore & Ohio Railroad Company received an injury to his fore-arm which resulted in his total disability, and entitled him to have all the benefits accruing to persons in his grade of service in the employment of said Baltimore & Ohio Railroad Company by reason of membership in said Baltimore & Ohio Employees' Relief Association, defendant, of the fact of which accident or injury and the disability consequent, said defendant was notified.

"Yet said Baltimore & Ohio Employees' Relief Association, defendant, hath hitherto declined," etc.

The defendant pleaded non assumpsit.

At the trial on December 15, 1887, it appeared in evidence that the defendant association was incorporated by an act of the legislature of Maryland of May 3, 1883, its object being to extend relief in case of sickness, injury, old age and death to the employees of the Baltimore & Ohio Railroad Company, and of other companies, and their families. On its organization, it adopted a constitution and a series of by-laws which provided a scheme of accident benefits, in which the railroad employees who became its members were graded into five classes, with reference to the amount of pay received by them monthly as such employees. The members of each class, when injured by accident while in the discharge of duty in the service of the railroad company, were to receive a certain sum per day while totally unable to labor, the payments to be re-

duced one half after six months' disability. To entitle an employee to these benefits, payable only from the date of perfecting his application for membership, he was to pay monthly a sum, graduated also according to the service in which he was engaged, which was to be deducted, in advance, from his wages upon the monthly pay-rolls of the railroad company.

In December, 1882, and January and part of February, 1883, the plaintiff was in the employ of the B. & O. R. Co., engaged, part of the time as a brakeman, and part of the time as a conductor, upon a gravel train upon the Pittsb. Southern Ry., a narrow-gauge road which had recently passed into the control of the B. & O. R. Co., and was in course of alteration to a standard gauge. On February 7, 1883, while in the discharge of his duty, he was injured to such extent that amputation of his left fore-arm became necessary, resulting in permanent disability.

The plaintiff, called in his own behalf, testified that about February 15, 1883, when he was paid for the month of January, his pay " should have been $52.60, or thereabouts ; " that he was paid " about $48," by a paymaster whose name he thought was Jenkins, in the employ of the B. & O. R. Co.

Q. Did you ask for an explanation at the time this payment was made to you ? Objected to.

The purpose is to show that at the time the plaintiff was paid his wages for the month of January, 1883, there was deducted from those wages an amount of money which the paymaster said was deducted by reason of the plaintiff's membership in the defendant association.

Objected to :

1. Because the plaintiff has not shown, and does not offer to show, that his application for membership was ever received, or passed upon and accepted by the corporation defendant, or that the defendant ever authorized t/ie collection of membership dues from him, or received the moneys alleged to have been collected from him by the paymaster, or ratified such collection.

2. Also, because the plaintiff has not shown what were the rules and regulations of the defendant corporation with respect to the rights of the members, and which formed a part of the contract alleged.

Statement of Facts.

By the court : Objection overruled, offer admitted.[1]

Q. Did you ask for an explanation ? A. I did. Q. What explanation was given, if any ? A. The paymaster told me that the reason my pay was short was because the insurance money was deducted from it.

It was shown that by his injury the plaintiff was totally disabled from working at his trade, that of a shoe-maker, and he then offered in evidence the Combined Experience Mortality Tables ; this for the purpose of enabling the jury to ascertain the value of the benefits to which the plaintiff is entitled, if they think he is entitled to any benefits, under the contract alleged to have been made with the defendant company.

Objected to :

1. For the reason that under the contract set up the plaintiff would be entitled to receive benefits only during the continuance of total disability to labor, and the evidence shows such total disability has ceased.

2. For the reason that the claim for future benefits arising after the institution of the suit is not included in the action, as shown by the pleadings.

· By the court : Objection overruled, offer admitted.[6]

By plaintiff's counsel : Mr. Post was born in October, 1844 ; he is now in his 42d year ; his expectation of life is twenty-five and eighty-four hundredths years.

The plaintiff then rested.

In its case in chief the defendant called Dr. J. A. Doerner, one of its medical examiners, who testified that sometime in the latter part of 1882, or in the early part of 1883, applications made by the employees on the Pittsb. Southern division, including the plaintiff, were placed in his hands.

Q. Did you go on and examine Mr. Post ? Objected to.

The purpose is to show that no steps were taken toward acting upon these applications.

Objected to as incompetent and irrelevant.

Defendant offers to show, that after Mr. Barren handed these applications to the witness, the medical examiner of the company, that Mr. Barren's superior officer overruled him and directed that the applications be not proceeded with ; this to be followed by evidence that the applications were not forwarded to the office of the secretary; that no action was

taken upon them, and they were never accepted, and no premiums were ever deducted from the wages of the men or received by the association.

By the court: Do you propose to follow that further by showing that Mr. Post had notice of this non-action of the company?

Defendant's counsel: I don't know how that is.

By the court: Objection sustained, offer overruled.[4]

The defendant then renewed the offer, with its terms more in detail and definite, and added: Also, that at that time a physical examination by the medical inspector was requisite in every application for membership in the association; the purpose of the offer is to show that one of the preliminary steps towards accepting or rejecting the application of the plaintiff was not taken, and the reason for this.

Objected to, as a whole, as incompetent and irrelevant.

By the court: Objection sustained to the offer as a whole.[5]

The defendant then proved the signatures of the plaintiff to two papers, exhibits H and I. These papers were receipts given by plaintiff, both dated January 25, 1882, for benefits paid by the defendant association, for the months ending October 31, 1881, and November 27, 1881, each containing the clause: " I declare on honor that during the period above stated I have not been able, by reason of said sickness, to perform my accustomed labor, and have not done work of any kind for pay."

Defendant offers in evidence the two papers identified by the plaintiff, and marked exhibits H and I.; to be followed by evidence that the last clause in the printed form constituting these papers was, both at the time the papers bear date and at the time the application of the plaintiff in question in this suit was signed, required to be included in every receipt to the association for benefits, whether sick or accident benefits; that this requirement was by a regulation of the association: This for the purpose of throwing light upon the construction and meaning of the provision in the constitution and by-laws of the defendant association of the words, total disability to labor, or, total inability to labor ; and also for the purpose of showing that the plaintiff had knowledge of the regulation aforesaid, and of the custom and course of dealing between the defend-

ant and its members in regard to the practical construction placed upon these words.

Objected to.

By the court: Objection sustained.[12]

The evidence adduced on the trial is sufficiently indicated in the charge to the jury, McILVAINE, P. J.:

\*     \*     \*     \*     \*     \*     \*     \*

The defendant is a corporation, and acts through its officers and agents. Its business is to indemnify the employees of the Baltimore & Ohio Railroad Company against loss of wages by reason of disability to labor caused by accident, sickness or old age. From the charter, constitution and by-laws, it appears that the consideration upon which the association makes these contracts of indemnity is a monthly payment to it out of the wages received by its members from the Baltimore & Ohio Railroad Company; and the railroad company, in making its monthly settlements with its employees, is authorized to retain for the association what is due it. Again, all the employees of the Baltimore & Ohio Railroad Company whose annual compensation is less than two thousand dollars per year are expected to subscribe to so much of the relief features of this association as relate to indemnity for injuries or death occurring while in the discharge of duty and in the railroad company's service. These facts, as we have said, we learn from the charter, constitution and by-laws offered in evidence. Again, the testimony of some of the witnesses of the plaintiff, if believed, tends to show that a refusal by an employee of the Baltimore & Ohio Railroad Company to become a contributor or member of the relief association, is almost sure to result in his discharge.

Having, now, thus fixed the relation in which these three parties stand towards each other,—that is, the Baltimore & Ohio Railroad Company, their employees and the relief association, the defendant in this case, let us look at the testimony bearing on the question whether a contract was entered into by the plaintiff and the defendant association. The plaintiff claims that some time in December, 1882, or January, 1883, one John Barren came to this place with blank applications for membership in this association. That B. F. King, who was

### Charge of Court below.

then in the employment of the Baltimore & Ohio Railroad Company as supervisor of trains, with the power of employing and discharging train hands, informed him, the plaintiff, and the other employees, that Mr. Barren was here to take applications and for them to go in the room where he was and sign them. The plaintiff testifies he complied with the request, and he and one Samuel Mackey signed applications for membership at the same time, and Mr. Mackey corroborates this statement. David Kerr testified he signed at the same time, and that Mr. Barren when here told him it would be to his interest to get the other employees to sign. In consequence of this conversation, Mr. Kerr says, he advised Post to sign and told him if he did not he might be discharged. One or two other witnesses testify as to Mr. Barren's visit here and as to signing these applications. From the evidence it appears that these applications when signed, including that of the plaintiff, were taken away by Mr. Barren.

That the plaintiff signed this application under those circumstances is not seriously denied. In fact Dr. Doerner, who is the medical examiner of the company, said that he saw the plaintiff's application in the possession of Mr. Barren afterwards. But it is denied that the application ever reached the office of the defendant association in Baltimore, or that it was ever passed upon or accepted as required by the rules of the company. You will recall in this connection the testimony of Dr. S. R. Barr, who was the secretary, and who appears to be in charge of the association's business. He says the plaintiff's application, in question, never reached the association's office, and he never heard of it until he received a letter from Mr. Post in regard to his claim for benefits on account of his injury. If the plaintiff's case rested here, it would appear the association had never accepted his application or assented to the plaintiff's becoming one of its members, at least in the way applications are usually accepted. [But the plaintiff claims that the Baltimore & Ohio Railroad Company, which was duly authorized to act in the premises, received an assessment from him on this application: or, in other words, that the railroad company, in pursuance of the power vested in it, retained for the use of the defendant association, out of the plaintiff's wages for January, 1883, his annual dues upon said application.

Charge of Court below.

If this is so, this act would amount to an acceptance of the application and ratification by the association, notwithstanding it may not have passed through the channel or routine that applications usually passed and as detailed by Mr. Barr, the secretary.] [2]   The defendant, however, strenuously denies that any of the plaintiff's wages for the month of January, 1883, was retained by the railroad company, as monthly dues for the insurance.   The plaintiff testified that his wages for that month were short when he received them from the paymaster, and that the paymaster said that the shortage was on account of the insurance.   Mr. Mackey corroborates the plaintiff as to the conversation with the paymaster, and said his explanation of the shortage was on account of the insurance.   Mr. Mackey also testified further that deductions were made from his wages, on his application made at the same time Mr. Post's was, and the company recognized the validity of his application afterwards by paying him benefits when he was sick.   On the other hand, the defendant produced on the stand the railroad company's accountant or clerk, who made out the pay-roll for January, 1883, also the paymaster and assistant paymaster, all of whom testify no deduction was made from the plaintiff's wages for the month of January, on account of insurance dues, as appeared by an inspection of the pay-roll itself, which was identified by them and offered in evidence, and which they claim should have shown the insurance dues retained, if any had been retained.

[Now, gentlemen, from the testimony to which I have briefly referred, in connection with any other testimony in the case bearing on the question, to which I have failed to call your attention, are you satisfied there was a contract executed between the plaintiff and the defendant association, which entitled the plaintiff to the benefits of membership?   Did the plaintiff in December, 1882, or in January, 1883, apply for admission into the association?   Did the association, by its authorized agent, the B. & O. Railroad Company, receive out of the January wages of the plaintiff his dues upon this application, thus recognizing him as a member of the association?   If you find from the preponderance of the evidence that these questions should receive an affirmative answer, then there was a contract and you will pass to the second question; that is, has the

Charge of Court below.

plaintiff suffered any damage by the defendant denying his membership.] [3]

That the plaintiff's hand was mashed at the time and in the way he describes, is not denied. That he has lost his left forearm as a direct result of the injury he sustained on February 7, 1883, while putting away Mr. Myers' train at this station, is not controverted. And if he was a member of the association it could not, we think, be successfully claimed he was not entitled to any damages. But how much? In determining this question you will take into consideration the provisions of the constitution and by-laws of the association. You will recollect that the contract is to indemnify against loss growing out of total disability or total inability to labor; that is, as we think, at the kind of work the plaintiff was engaged in or could engage in just before and at the time he was injured. You will also take into consideration the provision of the constitution which fixes the rates to which an injured employee is entitled, read in your hearing by counsel for the plaintiff. [You will take into consideration the plaintiff's age, and the character of his disability. Was it total? If so, how long did it continue thus? And if he has been, since the accident, continuously totally unable to labor, is this total disability of such a character as will probably continue during the remainder of his life?] [8]

[You will also take into consideration the testimony of the defendant's witnesses as to the plaintiff doing work for the railroad company within thirty-five days or two months after he received the injury. And viewing the case from all these standpoints, you will determine how much, on account of disablement, membership in the defendant association, admitted and recognized and fairly acted upon by the association, would have been worth to the plaintiff; or, as a result of the association denying his membership and refusing to admit him to its benefits, how much has he been damaged.] [9]

[There is no fixed rule by which damages can be ascertained in a case of this kind. You will carefully consider this question, and do that which your consciences will approve as an act of justice to both parties, and then neither will have a right to complain.] [10]

\*     \*     \*     \*     \*     \*     \*     \*

Charge of Court below.

The defendant has asked me to instruct you as matters of law, as follows:

1. Under the pleadings in this case, the plaintiff's action does not cover any demand for any benefits accruing subsequent to the commencement of the suit.

Answer: Refused. From an inspection of the narr and the bills of particulars filed by the parties, we are of the opinion that a recovery in this suit by the plaintiff would be a bar to any action for benefits under the contract, accruing after this suit was brought. The defendant's denial of the plaintiff's right of membership is the gist of this action, according to the pleadings and as tried.[7]

2. The words, totally disabled, and, total inability to labor, as used in the constitution and by-laws of the defendant association, mean not simply a disability to engage in such labor as requires the use of two hands, but a total incapacity to engage in any labor and earn a livelihood thereby, and if the jury find from the evidence that within thirty-five days to two months after his accident, the plaintiff was so far recovered as to be able to enter into an occupation yielding him a livelihood, and has so continued since, he could not have, under the contract of membership which he alleges was made with the association, any claim for benefits during a longer time than the aforesaid period of thirty-five days to two months.

Answer: This point, taken as a whole, is refused. In this case the words, total disability, and, total inability to labor, as used in the constitution and by-laws do not mean, a total incapacity to engage in *any* labor and earn a livelihood thereby, but *such* labor as the plaintiff was engaged in just before and at the time he was injured.[11]

The jury returned a verdict in favor of the plaintiff for $3,541. A rule for a new trial having been discharged, and judgment entered, the defendant took this writ and assigned as error:

1. The admission of plaintiff's offer.[1]

2, 3. The parts of the charge embraced in [ ] [2] [3]

4, 5. The refusal of defendant's offers.[4] [5]

6. The admission of plaintiff's offer.[6]

7. The answer to the defendant's first point.[7]

Arguments.

8–10. The parts of the charge embraced in [ ] [8 to 10]

11. The answer to the defendant's second point.[11]

12. The refusal of defendant's offer.[12]

*Mr. Jas. I. Brownson, Jr.* (with him *Messrs. A. W. & M. C. Acheson*), for the plaintiff in error:

1. Assume that the paymaster represented the railroad company in his alleged statements as to the deduction from plaintiff's wages, the attempt to affect the defendant by admissions of the railroad company, without evidence that the defendant association had ever accepted or even received the plaintiff's application for membership, involved the proof of agency by the declarations of the agent, which cannot be done: Whiting v. Lake, 91 Pa. 349; Hays v. Lynn, 7 W. 524; Clark v. Baker, 2 Wh. 340; Grim v. Bonnell, 78 Pa. 152. An act or admission of an agent appointed for a special purpose, outside the scope of the authority specially delegated to him, does not bind the principal without proof of ratification: Kerns v. Piper, 4 W. 222; Greene v. Insurance Co., 91 Pa. 387; Hackney v. Insurance Co., 4 Pa. 185; Reaney v. Culbertson, 21 Pa. 507; Twelfth St. Market Co. v. Jackson, 102 Pa. 269.

2. The paymaster, however, did not represent even the railroad company in making the alleged admission. Any statements as to insurance were outside the scope of his authority. He was but a paymaster, and his business was simply to pay according to the pay-rolls. A party who avails himself of the act of an agent, must prove the authority under which the agent acted, in order to give in evidence his declarations to charge the principal; the burden of proof lies on him to establish the agency and the extent of it: Hays v. Lynn, 7 W. 525; Amer. Life Ins. Co. v. Shultz, 82 Pa. 46, 51; Amer. Steamship Co. v. Landreth, 102 Pa. 131; Hampton v. Matthews, 14 Pa. 105, 108; Clark v. Baker, 2 Wh. 340, 343; 2 Whart. on Ev., § 1182. If any fact material to the interest of either party rests in the knowledge of the agent, it must be proved by his testimony, not by his assertion: Fairlie v. Hastings, 10 Ves. 126; Hannay v. Stewart, 6 W. 487; Shelhamer v. Thomas, 7 S. & R. 106; Hough v. Doyle, 4 R. 291; Patton v. Minesinger, 25 Pa. 393. A mere narration by an agent is not com-

petent evidence against his principal: Fawcett v. Bigley, 59 Pa. 411; Bigley v. Williams, 80 Pa. 107; Penn. R. Co. v. Books, 57 Pa. 339; Penn. R. Co. v. Plankroad Co., 71 Pa. 350; Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279.

3. If the foregoing positions are correct, it follows that the court should not have submitted to the jury the question of fact whether the railroad company had deducted the insurance dues from the plaintiff's wages, instructing that if this were the case, it would amount to an acceptance of the plaintiff's application and create a contract relation with the defendant: Hannay v. Stewart, 6 W. 487; Twelfth St. Market Co. v. Jackson, 102 Pa. 269. Moreover, the defendant's offers, set out in the fourth and fifth specifications, should have been admitted. They proposed to trace the application from the time it left the plaintiff's hands, showing where it went and where it stopped, parts of the res gestæ of the transaction. The testimony was rejected, apparently for the reason that it was not proposed to show that notice that his application had not been acted upon was given to the plaintiff. No notice was necessary: Ins. Co. v. Johnson, 23 Pa. 72; Amer. Life Ins. Co. v. Shultz, 82 Pa. 46.

4. The declaration charged simply a refusal to pay benefits; not a word is alleged of a denial of membership. True, the parties to an action may waive the pleadings, and may even go to trial without any; but the defendant has a right to hold the plaintiff to what he alleges: Parke v. Kleeber, 37 Pa. 251. This raises the question, what was meant by the phrase, total inability to labor? The obvious meaning is, an inability to engage in any labor for a livelihood, not simply an inability to engage in the occupation of a certain trade. The plaintiff admits that within two months after the accident he was at work for the railroad company and so continued until discharged for intoxication. The evidence showed, therefore, that all total inability within the meaning of the contract had ceased. Moreover, the charge in this case respecting damages is very like that in Penn. R. Co. v. Books, 57 Pa. 339, where the court below after laying down rules as to the measure of damages, instructed that the damages were in the control of the jury, which was held error.

5. Any contract is subject to interpretation in the manner

of the maxim, contemporanea expositio est optima et fortissima in lege ; and it is an old rule in insurance law that usage may be permitted to affect the construction of the policy : State F. & M. Ins. Co. v. Porter, 3 Gr. 123. It was to indicate that the words, total inability to labor, meant total inability to do any work for a livelihood, that exhibits H and I were offered, containing a clause interpreting the words referred to in accordance with that meaning.

*Mr. H. M. Dougan,* for the defendant in error :

1. A party necessarily must put in his evidence by steps, and the order of its introduction is a matter within the discretion of the court : Garrigues v. Harris, 17 Pa. 350. And a party objecting to evidence will be confined in the Supreme Court to the objection urged in the court below: Mills v. Buchanan, 14 Pa. 59 ; Fidler v. Hershey, 90 Pa. 363 ; Marsteller v. Marsteller, 93 Pa. 356. When the plaintiff was asked, Did you ask for an explanation at the time this payment was made to you ? no such objection to the evidence as that now urged was taken. But the evidence was competent and relevant. There is no principle better settled than that the acts and declarations of an agent bind his principal, when the act is done or the declarations are made during the agency and are within the scope of his authority: Stewartson v. Watts, 8 W. 394 ; Central Penn. Tel. Co. v. Thompson, 112 Pa. 132. Wherever what an agent did is admissible in evidence, then it is competent to prove what he said about the act while he was doing it : 1 Greenl. Ev. § 113.

2. If the offers of the defendant which were rejected, had been to show that no premiums had been deducted from the wages of the plaintiff, they might have been receivable. Such evidence would have been an answer to the plaintiff's case. But where part of an offer is inadmissible, it is not error to reject the whole of it : Sennett v. Johnson, 9 Pa. 337 : Wharton v. Douglass, 76 Pa. 276 ; Dewhurst v. Allegheny City, 95 Pa. 442. Now, the railroad company required that all its employees should become members of its relief association and contributors to its funds. Hence, when plaintiff signed the so-called application, he did not offer himself for membership ; he acceded to the requirement of his employer.

Nothing remained for him to do: he was a member of the relief association; for, by the act of signing he authorized the railroad company to assess the premiums against his wages. Under the contract, as he made it, he had a present title to the benefits, if he was injured, and neither the company itself nor its agents could deprive him of his title without notice: Friend v. Insurance Co., 50 N. Y. 243; Eilenberger v. Insurance Co., 89 Pa. 464.

3. Exhibits H and I were not competent or relevant evidence as to either of the matters referred to in the offer. The membership existing when those exhibits were signed had terminated. In this action the plaintiff was claiming not benefits, but damages consequent upon the tortious conduct of the defendant in agreeing that in a certain event he should receive certain payments, and in repudiating that agreement when the event happened. Moreover, how could this parol evidence throw any light upon the words, total inability to labor, in the constitution and the by-laws of the association?

4. The parts of the charge covered by the second and third assignments are not erroneous when the context is brought into view. It is not fair to pick out detached portions of a charge and endeavor to make them appear erroneous; the whole is to be taken together: Carothers v. Dunning, 3 S. & R. 373. Of course the mortality tables could have had no use other than to show what the plaintiff's expectation of life might be, to aid the jury in estimating the amount of damages. On a tort, or on a duty or promise which has already been violated as grossly as ever it can be, there is but one action, and in that the injured party must have full justice: Miller v. Wilson, 24 Pa. 120. Where there is an express contract, still if a common law duty result from the facts, the party may be sued in tort for any neglect or misfeasance in the execution of the contract: 1 Chitty Pl. 133–4; 1 Arch. N. P. 415; Cooley on Torts, 90; Richardson v. Mellish, 2 Bing. 229 (9 E. C. L. R. 391).

5. There can be no fixed rule for the ascertainment of damages in cases of tort. Had there been such a rule, defendant's counsel would have brought it to the attention of the court. The admonition of the court as to this matter is as unlike what was said to the jury in Penn. R. Co. v. Books, 57 Pa. 339, as

one thing can be unlike another. In the instructions taken as a whole, the court distinctly recognized the rule that in all cases like this, the plaintiff, if entitled to damages, is to be compensated.

OPINION, MR. JUSTICE PAXSON:

The plaintiff below was in the employ of the Baltimore & Ohio Railroad Company, and whilst so employed received a personal injury by which he lost his left arm and thereby was prevented from performing any manual labor for a number of weeks. The defendant is a corporation chartered by the state of Maryland. In its act of incorporation its objects are stated to be "to extend relief in case of sickness, injury, old age, and death, to the employees of the Baltimore & Ohio Railroad Company, and their families, and also to the employees of such other railroad companies as this association may permit to participate in its benefits, and to the families of such employees; to receive deposits on interest from said employees and their wives, and to loan them money at lawful rates of interest, in order to provide them with, or to improve homesteads, and generally to promote their welfare." The members of the association are divided into several classes and graded as respects their benefits. The details are not important.

The plaintiff claimed that he was a member of the defendant company at the time he was injured, and entitled to the benefits provided by its charter and by-laws. The defendant denies that he was a member, and that he had ever paid anything in the way of dues or assessments. The plaintiff then brought this action of assumpsit to recover "the amount of the benefits to which he became entitled upon the payment of the assessment as aforesaid." It will thus be seen that the matter of his membership was a vital question in the plaintiff's case. The by-laws provide that "Employees are entitled to the benefits of the association only from the date of perfecting their applications for membership."

Upon the trial below, the plaintiff produced no certificate of membership, nor any written evidence of any kind showing that he was a member of the association. He testified that he had signed an application to be admitted as a member, but he had never been notified of his admission; nor had he ever been

examined by the company's physician, or taken any of the steps required by the rules regarding admission. He further testified, under objection, that when he came to receive his monthly pay for January, 1883, the paymaster of the railroad company informed him that his dues to the defendant company had been deducted. Samuel Mackey, a witness for plaintiff, also testified that he was present and heard the above statement by the paymaster. This was all the evidence in the case to show that plaintiff was a member of the company, and upon this he was allowed to recover and hold a verdict for $3,541.

The admission of the declarations of the paymaster forms the subject of the first assignment of error. I quote the language of the assignment:

The court erred in overruling the defendant's objection to and admitting the following offer of evidence made by the plaintiff below.

(William B. Post, the plaintiff, on the stand; witness had just stated that when he was paid his wages for January, 1883, by the paymaster of the Baltimore & Ohio Railroad Company, there was a shortage in the amount received by him.)

Q. Did you ask for an explanation at the time that this payment was made to you?

The purpose is to show that at the time the plaintiff was paid his wages for the month of January, 1883, there was deducted from those wages an amount of money which the paymaster said was deducted by reason of the plaintiff's membership in the defendant association.

This was objected to, the objection was overruled, and a bill sealed. The witness then proceeded.

Q. What explanation was given if any? A. The paymaster told me that the reason my pay was short was because the insurance money was deducted from it.

This declaration was received and allowed to go to the jury as proof of the fact of plaintiff's membership. Moreover, it was the only proof in the case.

I may observe just here, in passing, that in point of fact there was no deduction from his wages on account of dues to the association. If the fact depended on oral testimony I would not state it in this positive manner. The pay-roll itself was produced upon the trial in the court below, and showed

upon its face that no such deduction had been made, but that on the contrary it arose from a discrepancy in regard to time, the plaintiff claiming he had made more time than the company's time-book showed. There was also proof uncontradicted, that plaintiff's application had never been acted upon, and that he had never been admitted to membership. The admission of the paymaster's declarations, however, must be considered in view of the case as it stood at the time they were offered.

There was no proof produced by the plaintiff at any stage of the cause that the paymaster had any authority to make such a declaration, or that he was authorized to make any deduction from plaintiff's wages on account of dues to the defendant company, or that he was an agent, officer, or even a servant of the company. He was merely the servant of the Baltimore & Ohio Railroad Company, another and distinct corporation. The latter company had no power to admit a man to membership in the defendant corporation, yet what the railroad company could not do, one of its employees has practically done, and that by a mere loose declaration which, if made by him, he had no authority to make, and which bound no one but himself. Such a result can only come from an error somewhere. That it has its source in the erroneous admission of the paymaster's declarations, is very plain to our view.

It is true the plaintiff put in evidence, subsequent to the ruling of the court upon this question, the constitution and by-laws of the defendant company. It is there provided that "All the contributions due by the members of this society shall be paid in advance. by being deducted from the monthly wages due them by either of the companies aforesaid, and every person signing these rules hereby assents to such reduction." From this it was argued that the railroad company had the right to deduct the dues from the plaintiff's wages ; that the pay-master was the company's agent for that purpose, and that his declarations while in the performance of that duty were competent evidence of the fact of such deduction. The whole of this proposition is unsound. In the first place the railroad company could only deduct dues from members. This could only be done after being officially notified by defendant company that the employee had been admitted to membership. Without such notice a deduction of dues from one of its employees

would have been merely an unlawful act, which would bind no one but itself. In the second place, the fact, if it be so, that the railroad company was the agent of the defendant company to collect the dues from the employees of the former, does not constitute the paymaster its agent for any purpose, much less to bind it by his declarations. Considering for the sake of the argument that he was an agent of the railroad company, and that his declarations might bind his employer, it by no means follows that they would bind another corporation which had never employed him, and probably did not know of his existence. But the declarations in question would not have bound the railroad company, for the reason that he had no authority to make them, nor were they properly in the course of his employment. No more dangerous kind of evidence exists than this, and no case could more fully illustrate its danger than the one in hand.

The uncontradicted evidence showed that the paymaster had nothing to do with deductions for dues; that he did not handle the amount of such deductions; the money, therefore, did not pass through his hands: that whatever deductions were made from the pay-rolls were made by other officers; that he had nothing to do with the data from which the pay-roll was made up or the method of reaching that result; that when the pay-rolls were made up by the proper officers and sent to him, his duty, and his only duty, was to pay the men the balance due thereon; so that the declaration of this paymaster was as to what some one else had done at some other time and some other place.

As the railroad company was only an agent for a specific purpose, it could only bind its principal, the defendant company, by an act done within the scope of its authority. Its authority only extended to the single act of collecting dues from the members of the association. If it collected dues from a stranger without any notification from the association that he was a member, it might bind itself, but it could not thereby bind the association, force upon it a member which it had not accepted, and render it liable to him for benefits. Authority must be shown to make the collection, or a subsequent ratification of the unauthorized act: Twelfth Street Market Company .v. Jackson, 102 Pa. 269; Kerns v. Piper, 4 W. 222;

Hackney v. The Insurance Co., 4 Pa. 185; Reaney v. Culbertson, 21 Pa. 507; Greene v. Insurance Co., 91 Pa. 387. Neither authority nor ratification is to be found within the four corners of this record. An agent's authority cannot be shown by his own declarations: Grim v. Bonnell, 78 Pa. 152; Whiting v. Lake, 91 Pa. 349. A party who avails himself of the act of an agent must, in order to give in evidence his declarations to charge his principal, prove the authority under which the agent acted. The burden of proof lies on him to establish the agency and the extent of it: Hays v. Lynn, 7 W. 525; American Life Insurance and Trust Co. v. Shultz, 82 Pa. 46.

But the paymaster was not even the agent of the railroad company; he was a mere servant. The distinction between these classes of employees is sometimes lost sight of, and when it is, injustice is likely to follow. The distinction is well stated by Doctor Wharton in his book on Evidence: "We must remember that a servant moves within a limited orbit, one far more limited than that of an agent; and that consequently the admissions of a servant are more jealously guarded than are those of an agent. An agent is authorized to exercise discretion, when a servant is authorized to exercise discretion then he ceases to be a servant and becomes an agent. Those dealing with a mere servant, knowing him to be such, know that, except in the immediate discharge of a mechanical duty, he is not authorized to bind his master by his admissions. Hence, ordinarily, a master, except within such range, is not so bound:" 2 Wharton on Evidence, § 1182. The paymaster in this case was clothed with no discretion. He was a mere servant to perform a purely ministerial duty, viz.: to pay the men the amount respectively appearing to be due them from the railroad company by the monthly pay-rolls sent to him for that purpose. He had no authority to withhold any portion, for any purpose, of the amount designated in the pay-roll. Having no discretion, no duties to perform that were not ministerial, he cannot be said to be the agent of the company in any proper sense. He was an employee with certain defined duties, just as are the brakemen, switch-tenders, engineers, firemen, and the thousands of other employees who are always to be found in the service of a great railroad company. To dignify such employments by the name of agents

would not only be grotesque, but a serious innovation in the law as it has always been understood. And if we go further and hold the employer responsible for all the loose declarations of this army of servants, it is not difficult to see endless confusion and injustice as the result. In Fairlie v. Hastings, 10 Ves. 126, it was said by Sir WILLIAM GRANT in discussing this subject: "An agent may undoubtedly within the scope of his authority bind his principal by his agreement, and in many cases by his acts. What the agent has said may be what constitutes the agreement of the principal; or the representations or statements may be the foundation of or the inducement to the agreement. Therefore, if writing is not necessary by law, evidence must be admitted to prove the agent did make the statement or representation. So with regard to acts done, the words with which these acts are accompanied frequently tend to determine their quality. The party, therefore, to be bound by the act must be affected by the words. But, except in the one or the other of those ways, I do not know how what is said by an agent can be evidence against his principal. The mere assertion of a fact cannot amount to proof of it, though it may have some relation to the business in which the person making that assertion was employed as agent . . . . . If any fact material to the interests of either party rests in the knowledge of an agent it is to be proved by his testimony, not by his mere assertion."

In the case in hand the fact to be proved was that the railroad company had deducted plaintiff's dues from his January pay. No attempt to prove this in a legitimate way was made. The paymaster was a competent witness and if he had knowledge of the matter could have been called and sworn. Instead of doing so the plaintiff was allowed to prove his declarations, not as to anything he had done, but what some other persons had done some time before. The danger of admitting such loose declarations is shown by the fact found by the jury that the dues have been deducted, in the face of clear, uncontradicted evidence to the contrary.

What an agent says in the course of his employment, and within his authority, is evidence against his employer, because it thus becomes the act of the principal. Thus, if A. is the agent of B. to make a contract for the latter, what A. says in

regard to the contract at the time it is being made is a part of the contract: it is the equivalent of the sayings or acknowledgments of the principal. They may be explanatory of the agreement, or determine the quality of the act which they accompany, and therefore must be binding on the principal as the act or agreement itself. The declarations or admissions of an agent in such cases are admissible, not for the purpose of establishing the truth of the facts stated, but as representations by which the principal is as much bound as if he made them himself, and which are equally binding whether the fact be true or false: Phillips on Evidence, 73; Hannay v. Stewart, 6 W. 487; and where a principal is bound for the acts or declarations of his agent, it is generally for the reason that said acts or declarations have led up, or been the inducement to, or explain, or qualify, or form part of some contract, or have caused some act to be done upon the faith thereof.

It has been seen that the declarations of the paymaster related to a past occurrence over which he had no control. In Fawcett v. Bigley, 59 Pa. 411, the defendant's barges broke from their moorings, ran into the plaintiff's barges and destroyed one of them and its cargo. Declarations of the agent of the defendant who had charge of his barges, made within an hour after the accident, could not be given in evidence to charge the defendant. To the same point are Railroad Company v. Books, 57 Pa. 339; Patton v. Minesinger, 25 Pa. 393; Bigley v. Williams, 80 Pa. 107. Nor is the declaration of an existing fact by an agent necessarily admissible. It depends upon its circumstances to make it so. It must be strictly within the line of the authority of the agent: Hanover Water Company v. Ashland Iron Company, 84 Pa. 279; Fairlie v. Hastings, supra.

We need not pursue this branch of the case further. We are clearly of the opinion that it was error to admit the declarations of the paymaster. This disposes of the first assignment of error. The second and third are also sustained. Aside from the declarations referred to, there was nothing to sustain these portions of the charge of the learned judge. We think the evidence of Doctor Doerner should have been received. (See fourth and fifth assignments.) He was the medical examiner of the defendant company and the evidence

was offered by the latter as links in the chain, to show that plaintiff had never become a member of the association. When such loose declarations had been admitted to prove his membership, surely the defendant company had the right to show that he had never been examined by the medical officer, as required by the rules, and that he had never been accepted as a member. It was also error to admit in evidence the "Combined Experience Mortality Tables." (Sixth assignment.) The plaintiff was suing for weekly benefits, and the mortality tables had nothing to do with the case. We also sustain the seventh assignment. The court was asked to instruct the jury that "Under the pleadings in the case the plaintiff's action does not cover any demand for any benefits accruing subsequent to the commencement of the suit." This was refused. The narr was in assumpsit for the benefits, and only such could be recovered in this action as were due at the time the writ issued. In this connection we may refer to the question of the measure of damages. The learned judge charged the jury that "There is no fixed rule by which damages can be ascertained in a case of this kind. You will carefully consider this question and do that which your consciences will approve of as an act of justice to both parties, and then neither will have a right to complain." This was clearly error, as it left the jury no standard save their own consciences, which is too uncertain for practical purposes. As the plaintiff sued for his benefits, it is clear the measure of damages would be the stipulated sum he was entitled to under the charter and by-laws of the company, provided his membership was established.

The declaration was not for the refusal of the company to admit him to membership, but, as before stated, to recover his benefits as a member, and the breach was a mere refusal to pay them. If this verdict is allowed to stand, I see nothing to prevent a recovery for benefits accruing subsequent to the commencement of the action. We also think the court below erred in its construction of the words "total inability to labor" contained in the constitution and by-laws. This was a relief association, not an accident insurance company. Its object was to relieve its members during the time when they were unable to work by reason of injury or sickness. Hence, if a member was injured in such a way that he could no longer

·arn a livelihood at the particular labor in which he was employed at the time of the accident, yet was capable of earning as much or more money in some other employment, it was certainly not the object of the association, as expressed by its charter and by-laws, that he should remain idle and draw benefits all his life. The evidence shows that the plaintiff was taken back into the employ of the railroad company about two months after his injury, and was so retained until after a second discharge—the first of which was, according to his own testimony, for drunkenness, and the second for inattention to his duties. The twelfth assignment is not sustained.

<div align="right">Judgment reversed.</div>

<div align="right">

| 122 | 601 |
|-----|-----|
| 150 | 150 |
| 122 | 601 |
| 149 | 226 |
| 122 | 601 |
| 172 | 456 |

| 122 | 601 |
|-----|-----|
| 191 | 270 |

| 122 | 601 |
|-----|-----|
| 26 SC | ³430 |

| 122 | 601 |
|-----|-----|
| 28 SC | ⁸550 |