## UNITED STATES FIDELITY & GUARANTY CO. v. McCARTHY.

Circuit Court of Appeals, Eighth Circuit.
March 9, 1929.

Rehearing Denied, with Modifications, June 17, 1929.

No. 8261.

James C. Davis and Jesse A. Miller, both of Des Moines, Iowa (James C. Davis, Jr., and Frederic M. Miller, both of Des Moines, Iowa, on the brief), for appellant.

C. S. Bradshaw, of Des Moines, Iowa (W. B. Sloan and W. C. Strock, both of Des Moines, Iowa, on the brief), for appellee.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

KENYON, Circuit Judge. Prior to January 1, 1903, appellee was engaged in the general practice of medicine and surgery, and subsequent thereto exclusively in the practice of surgery in the City of Des Moines, Iowa,

and the surrounding country tributary thereto.

On the 15th day of April, 1921, he applied to appellant for an indemnity accident policy, which was issued the same day, and the first annual premium of $741.60 paid. It provided for a weekly accident indemnity of $250 for total disability and a lesser amount for partial disability.

On December 6, 1922, while the policy was in force, the second annual premium on the policy having been paid, appellee was injured by falling on the sidewalk leading from the street to his house. He was carrying a glass jar, which was broken in the fall, and in some manner his right hand and wrist were cut and lacerated, and the median nerve was severed, resulting in serious impairment of the hand.

Appellant paid an indemnity for total disability under the policy at the rate of $250 per week for a period of one year after the injury amounting to $13,000. Thereafter it denied further liability.

In 1924 appellee brought suit on the policy for recovery of accrued indemnity for continuous total disability. This suit was tried in the United States District Court for the Southern District of Iowa, in December, 1925, having been removed from the state court. Judgment was recovered for $26,077.-69 based upon continuous total disability for the period from December 6, 1923, to October 22, 1925. Appellant paid this judgment. Appellee continued to file proofs of loss at more or less irregular periods, and appellant continued to deny liability.

The present action was brought in October, 1926, to recover indemnity for alleged total disability accruing under the same policy involved in the first suit. Amendments to the complaint were subsequently filed under which the period of time for which indemnity was sought was from October 22, 1925, to February 23, 1928. Appellee pleaded the proceedings in the former action as an estoppel preventing relitigation of all the issues tried and determined in that suit. Appellant denied the estoppel, and pleaded that appellee's disability was not total, but partial. At the conclusion of the evidence, which consisted on the part of appellee of all the proceedings in the former case (these being introduced and admitted on the question of former adjudication) and also other evidence on the part of both appellee and appellant of physicians, experts, and others, both parties moved the court for an instructed verdict, appellant reserving in its motion the right to submit the case to the jury, if said motion was overruled.

The court instructed a verdict for appellee for the full amount claimed, and judgment was entered on the verdict for $32,-641.55.

Appellee's motion to direct verdict was based on the theory that each and every fact essential to his recovery in the case had been so established that reasonable minds could not differ as to his right to recover, and, further, that in the former action he was adjudicated to be totally disabled, as defined by the terms of the insurance contract, and that no evidence had been introduced to warrant a finding of improvement in his condition or any lessening of his disability since the date of the previous adjudication, and that, in the absence of any such showing, appellant was estopped by the former judgment from questioning his total disability.

The main bone of contention in the controversy is apparent and sharp, viz. the effect of the judgment in the former trial.

The complaints in both cases are quite similar. There is one marked difference, in that the period of claimed continuous total disability in the present action covers an entirely distinct period of time.

The answer of appellant in this case is somewhat more extended than in the former one. It attempts to make new issues on the question of continuous total disability. It is more detailed, and there are new matters pleaded relating to the ability of appellee to perform substantial duties of his profession. New witnesses were introduced on the trial, and appellant urges that the present case is based on a new cause of action covering an entirely different period of time than that covered by the first case, and that in this case the "continuous total disability" of the appellee can be litigated without reference to the former action.

Whatever may have been the theory in the trial court as to res judicata or judgment by estoppel, it is admitted in this court that the strict doctrine of res judicata is not applicable, as it is conceded that this action is a different cause of action from the former one. Counsel for appellee say in their printed brief: "The present case involves an entirely new and distinct cause of action from that embraced in the former suit and, therefore, there could not possibly be a strict bar of res adjudicata. It (former judgment) was offered by appellee and treated by the court below simply as an element of evidence." Again: "Appellee has at all times recognized perfectly that the present suit for indemnity, for the period between October 22, 1925, and February 23, 1928, is a distinct cause of action from that embraced in the former suit

for the period between December 6, 1923, and October 22, 1925. There is no need of harping on that subject. Counsel agree perfectly, and so did the trial court. It is a distinct cause of action." These statements in appellee's brief that this is a distinct cause of action from that embraced in the former suit accord with our judgment, and the case will be so considered.

The law as to estoppel by judgment is well settled and plain. Difficulty ofttimes arises in its application to particular facts. From the early case of Cromwell v. County of Sac, 94 U. S. 351, 353, 24 L. Ed. 195, where the court said: "But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action," down to the case of Baltimore Steamship Co. v. Phillips, 274 U. S. 316, 319, 47 S. Ct. 600, 602 (71 L. Ed. 1069), where the court said: "But if the second case be upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue or points controverted, upon the determination of which the judgment or decree was rendered," the enunciations of the Supreme Court on the subject have been clear. We quote from a few of the many cases where tests have been laid down by which to determine what is concluded by a former judgment.

In Radford v. Myers, 231 U. S. 725, 730, 34 S. Ct. 249, 250 (58 L. Ed. 454), the court said: "As the suit in the Michigan court was not upon the identical cause of action litigated in the United States Circuit Court the estoppel operates only as to matters in issue or points controverted and actually decided in that suit."

In Bates v. Bodie, 245 U. S. 520, 526, 38 S. Ct. 182, 184 (62 L. Ed. 444, L. R. A. 1918C, 355), the court said: "And this court has established a test of the thing adjudged and the extent of its estoppel. It is: * * * If the second action was upon a different claim or demand, then the judgment is an estoppel 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' "

In United Shoe Machinery Corporation et al. v. United States, 258 U. S. 451, 459, 42 S. Ct. 363, 366 (66 L. Ed. 708) the court said: "In other words, to determine the effect of a former judgment pleaded as an estoppel, two questions must be answered: (1) Was the former judgment rendered on the same cause of action? (2) If not, was some matter litigated in the former suit determinative of the matter in controversy in the second suit? To answer these questions we must look to the pleadings making the issues, and examine the record to determine the questions essential to the decision of the former controversy." See, also, on the general subject of the law Russell v. Place, 94 U. S. 606, 24 L. Ed. 214; Nesbit v. Riverside Independent District, 144 U. S. 610, 12 S. Ct. 746, 36 L. Ed. 562; New Orleans v. Citizens' Bank, 167 U. S. 371, 17 S. Ct. 905, 42 L. Ed. 202; Southern Pacific R. Co. v. United States, 168 U. S. 1, 18 S. Ct. 18, 42 L. Ed. 355; Mitchell v. First National Bank of Chicago, 180 U. S. 471, 21 S. Ct. 418, 45 L. Ed. 627; Fayerweather v. Ritch, 195 U. S. 276, 25 S. Ct. 58, 49 L. Ed. 193; Virginia-Carolina Chemical Co. v. Kirven, 215 U. S. 252, 30 S. Ct. 78, 54 L. Ed. 179; Troxell v. Del., Lack. & West. R. Co., 227 U. S. 434, 33 S. Ct. 274, 57 L. Ed. 586; Hartford Life Ins. Co. v. Ibs, 237 U. S. 662, 35 S. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765; Myers v. International Trust Co., 263 U. S. 64, 44 S. Ct. 86, 68 L. Ed. 165; United States v. Moser, 266 U. S. 236, 45 S. Ct. 66, 69 L. Ed. 262.

In National Surety Co. v. Jenkins (C. C. A.) 18 F.(2d) 707, 710, this court said: "Since the National Company seeks relief in the instant case upon a different and distinct cause of action from the one asserted by it in the former suit, the judgment in the former suit is conclusive only as to such points or questions as were actually in issue and adjudicated therein." See, also, Pittsburgh, C., C. & St. L. Ry. Co. et al. v. Keokuk & H. Bridge Co. (C. C. A.) 107 F. 781; Water, Light & Gas Co. v. City of Hutchinson (C. C. A.) 160 F. 41, 19 L. R. A. (N. S.) 219; Fitch v. Stanton Tp. et al. (C. C. A.) 190 F. 310; Irving Nat. Bank v. Law (C. C. A.) 10 F.(2d) 721.

In 2 Freeman on Judgments, § 692, it is stated, "A judgment is a conclusive adjudication of every matter both of law and fact the determination of which is essential to support it." See, also, 34 C. J. § 1283.

Whether we say a former judgment is an

estoppel as to those matters actually in issue and there determined—or as to the matters conclusively established essential to the judgment, or "that some right, question of fact in dispute between parties has been judicially determined," the legal thought is the same, viz., that, where the second action between the same parties is upon a different and distinct cause of action, the judgment in the prior case is conclusive only as to those matters, questions, and issues litigated and determined in the previous action. They cannot again be litigated between the same parties, in the absence of modification or reversal of the judgment. Evidentiary facts are not issues— they are merely the means by which the end is attained. The matters in issue, which are concluded by the judgment, are the ultimate facts as developed by the pleadings and the evidence. From Smith v. Town of Ontario (C. C.) 4 F. 386, 390, 18 Blatchf. 454, 457, we quote on this subject: "The matter in issue has been defined in a case of leading authority as 'that matter upon which the plaintiff proceeds by his action, and which the defendant controverts by his pleading.' King v. Chase, 15 N. H. 9 [41 Am. Dec. 675]. The issues presented by the pleadings may be modified by the proceedings upon the trial, as where a defense is withdrawn from consideration, or where a count in declaration is abandoned. However this may be, the matter in issue or the point in controversy is that ultimate fact or state of facts in dispute upon which the verdict or finding is predicated." This case, together with King v. Chase, 15 N. H. 9, 41 Am. Dec. 675, is referred to with apparent approval in Reynolds v. Stockton, 140 U. S. 254, 270, 11 S. Ct. 773, 35 L. Ed. 464.

What were the matters in issue or points controverted upon the determination of which the judgment in the former case was based? What was finally determined therein and ended?

In answering these questions it must not be lost sight of that the action was one upon a written contract which limits and defines the rights of the parties. "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 463, 14 S. Ct. 379, 381 (38 L. Ed. 231); Standard Life & Accident Ins. Co. v. McNulty (C. C. A.) 157 F. 224, 226. The contract of insurance provided indemnity for total and partial disability resulting from accidental bodily injury, and defined those terms. The following provisions thereof are of importance:

"Total Loss of Time. Or, if 'such injury' shall not result in any of the losses mentioned in Schedule I, but shall cause continuous total disability, and prevent the Insured from date of accident, from performing any and every duty pertaining to his occupation, the Company will pay him the weekly Accident indemnity above specified, for the period of such disability.

"Partial Loss of Time. Or, if 'such injury' shall from the date of accident or immediately following total disability, prevent the Insured from performing one or more material duties pertaining to his occupation, the Company will pay one-half of the above specified weekly Accident indemnity for the period of such continuous partial disability, but not to exceed a period of fifty-two consecutive weeks. Weekly indemnity will not be payable under the provisions of Schedule I except as therein stated."

\* \* \* \* \* \*

"Weekly Indemnity Payable in Installments. 10. Upon request of the Insured and subject to due proof of loss all of the accrued indemnity for loss of time on account of disability will be paid at the expiration of each four weeks during the continuance of the period for which the Company is liable, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof."

It also provided for furnishing proofs of loss within 90 days of termination of period for which the company is liable and for medical examination of the insured when desired. It is admitted that appellee filed proofs of loss from time to time covering the period from October 22, 1925, to February 23, 1928. The petition in the former case stated: "Such disability has been total, complete and continuous since December 6, 1922, up to the present time, within the meaning of the Policy P D 23623, and has prevented plaintiff throughout such period of time," etc. The court in its instructions to the jury recognized the importance of these periods of time provided by the policy, saying:

"If you find that *during all of the time the plaintiff seeks to recover indemnity* for he was continuously totally disabled and prevented from performing any and every material and necessary duty pertaining to said occupation, then the plaintiff is entitled to recover indemnity at the rate of $250.00 per week during such disability, and that would be $250.00 a week *for the period of ninety-*

*eight weeks.* If, during the said time the plaintiff was able to perform any material or necessary duty pertaining to his occupation, then he was not totally disabled and cannot recover for total disability *during any period* that he could perform any such duty or duties." (Italics ours.)

There can be no question that the issue presented to the jury was as to total disability for a particular period of time. "During said time," "for the period," "during any period," says the court. The policy provided that payments were to be made at the expiration of each four weeks upon proper proofs of continuous total disability for a particular period. All this appellee recognized. Appellee's motion for an instructed verdict in this case recognizes periods of time, and asks recovery "on installments of $250.00 weekly as same have accrued each and every week since October 22, 1925."

The matters in issue determined and ended in the former case were: The issuance of the policy, payment of the premium, occurrence of the accident, the injury to the hand, that appellee was totally disabled from such injury under the terms of the policy for a period of time from December 6, 1923, up to the 22d day of October, 1925. Judgment could not have been rendered without determination of these matters. It was litigated and decided therefore in the former case that the injury to the hand had caused continuous, total disability for a certain period of time, and had prevented appellee "from performing any and every duty pertaining to his occupation" during that period. Total disability was an ultimate fact and issue—the condition of the hand an evidentiary fact. The evidence introduced in the former case did not establish permanent total disability, nor that total disability would continue over the period for which indemnity is claimed in this suit. The question litigated was continuous total disability during the period for which recovery was sought. The period of time covered in this case was then in the future. As the burden there was upon appellee to show continuous total disability for the period involved, the same burden rests upon him to show such continuous total disability for the period here involved, and the right under the terms of the policy is in the appellant to contest the question of such total disability for every period of time provided by the terms of the policy.

Appellee admits that appellant may show a change as to disability brought about by new conditions, but insists that total disability was found in the former case upon the same facts and circumstances as are presented in the present suit, and that this question cannot be relitigated in a second suit upon evidence of the same character as in the former suit, and admits that the estoppel extends only to the facts as they existed at the time of the former judgment, and that new conditions may be shown which may affect the legal rights of the parties, but insists that, in the absence thereof, the facts will be presumed to continue as they were at the time of the former judgment.

Appellee calls to the special attention of the court the opinions in Spaulding et al. v. Mutual Life Ins. Co., 94 Vt. 445, 111 A. 522, and Spaulding v. Mutual Life Ins. Co. of N. Y., 96 Vt. 67, 117 A. 376, as showing pertinent instances of the proper use and extent of the doctrine of estoppel by judgment. The former case refers with approval to the doctrine of Cromwell v. County of Sac, supra (page 351 of 94 U. S.), on the subject at issue, and it is interesting to observe that in the latter case (96 Vt. 67, 73, 117 A. 376, 378) the court says: "It is not the finding of facts which constitutes an adjudication, but the conclusion of the court as to the effect of those facts determined as matter of law." The rule announced in these cases is the same as that in the various federal cases to which reference has hereinbefore been made, viz., "It is only upon matters actually litigated and determined that the judgment is conclusive, where the causes of action are different." 94 Vt. 445, 448, 111 A. 522, 524.

The case of New Orleans v. Citizens' Bank, 167 U. S. 371, 17 S. Ct. 905, 42 L. Ed. 202, is the main reliance of appellee. The question involved was one of exemption of the banking corporation from certain taxation under a statute of Louisiana. This language there employed, "It follows, then, that the mere fact that the demand in this case is for a tax for one year and the demands in the adjudged cases were for taxes for other years, does not prevent the operation of the thing adjudged, if, in the prior cases, the question of exemption was necessarily presented and determined upon identically the same facts upon which the right of exemption is now claimed," would seem to give countenance to appellee's position, if the circumstances and conditions considered were similar to those of the present case.

However, this language must be viewed in connection with the facts of that case. It had been determined by previous judgments that, by virtue of a special charter from the state of Louisiana exempting the bank from taxes, there was no power to levy such taxes

for certain years. The Supreme Court of the United States held that such adjudication was binding in a subsequent action to collect taxes for a different year from those involved in the prior suit. Certainly there is a marked difference between a finding as to a tax exemption under a charter and a finding as to continuous total disability. One is a certain, fixed, and completed matter; the other is dependent 'on such evanescent things as mental attitude, determination, effort, and ingenuity. We do not think the case is at all controlling here.

The position taken by appellee is that the disability, having been found to be total and continuous up to the 22d day of October, 1925, settles that question for all time, unless appellant can show to the contrary. In other words, that there is a presumption that a party once suffering total disability for a period of time continues to be totally disabled for all time, and that any one claiming otherwise must prove the change. Total disability for the period of time involved in this suit is not settled by the judgment in the former suit, unless a presumption exists that such disability being established in that suit continues over the period for which recovery is sought in this suit. It is not quite clear from the record just what position counsel for appellee take on the question of presumption. In their brief it is stated: "But, talk of presumptions is all bosh. Appellee puts on affirmative testimony that neither is nor can be contradicted, to show that the disability does continue and, instead of improving, is really worse than at the time of the former judgment. He doesn't rely on presumption." However, appellee argues in his brief that, "in the absence of evidence to the contrary, the facts as they existed at the time of the former judgment will be presumed to continue." Again it is stated: "The former judgment does not foreclose appellant's right to try this case out fully. It is a new and distinct law suit. But, appellee alleges that in a former trial between the same parties, before a court of competent jurisdiction, he was adjudicated to be totally disabled under this same policy contract. In order to show that this is true, he offers the entire record of the former suit in evidence. That is conclusive proof that this issue was once adjudicated. The adjudication applied only to the time of the former judgment, however, and the present suit is for a later period. Nevertheless, the rule of law is that in the absence of evidence to the contrary, the facts as they existed at the time of the former judgment will be presumed to continue." Also

that the judgment in the former case "was offered in evidence in this case as an element of evidence." It is obvious that some reliance is placed on the presumption that "proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time." 22 C. J. p. 86. Cleveland, C., C. & St. L. Ry. Co. v. Starks, 58 Ind. App. 341, 106 N. E. 646; Yankton Nat. Bank v. Benson, 33 S. D. 399, 146 N. W. 582, Ann. Cas. 1916B, 1011. However, there is no inference that such fact will "continue to exist for any definite period of time." 16 Cyc. p. 1052. "The inference steadily diminishes in force with lapse of time, at a rate proportionate to the quality of permanence belonging to the fact in question, until it ceases or perhaps is supplanted by a directly opposite inference." 22 C. J. 87. In Wigmore on Evidence, § 437, it is said: "Whether the fact of a tree's existence a year ago will indicate its continued existence today will vary according to the nature of the tree and the conditions of life in the region. So far, then, as the interval of time is concerned, no fixed rule can be laid down. The nature of the thing and the circumstances of the particular case must control."

In view of the provisions of the policy providing payment of indemnity for distinct periods of time of total disability and the right to the appellant to contest such payments and to investigate at any time such claimed continuous disability, it is apparent that it was not the intention of the parties to the contract that total disability established for one period should establish the same for a subsequent period. It was established by the judgment in the former case that appellee, during the period of time for which indemnity was sought, and at the termination thereof, did, by reason of the injury to his hand, suffer total disability under the terms of the policy; that is, was unable to perform any and every duty pertaining to his occupation as a surgeon.

If appellee had introduced the record in the former case and rested, and appellant had introduced no evidence, certainly a court could not have told the jury that there was a presumption therefrom that the total disability there found would continue to exist over the period in suit. We do not think a presumption should be indulged that a highly educated, intelligent, and healthy surgeon by virtue of an injury to his hand such as is here shown could not practice any substantial part of surgery at any time in the future because it had been determined

that for some particular period he could not so do. Disability is not entirely a physical matter. Will power and condition of mind enter into it. A person may be disabled to-day, and in a year from now, without any change in the physical condition, not be disabled. A one-handed man may not be able to perform .surgery to-day, and in a year from to-day may have overcome to some extent his disability and be able to perform some part of the substantial duties of a surgeon. If appellee's hand remains in the same condition for the years to come, it might be that he could do some surgical work, and it might be he could not. That is a question of fact to be determined for the period for which he seeks to recover indemnity. That his hand remains in the same condition is not conclusive that his disability also continues. Indemnity under the policy was for disability—not for injury to the hand. The question of any presumption is of little importance as a practical matter in this case. We have perhaps occupied too much time with it in view of the statement in the brief of counsel for appellee that they do not rely thereon.

We are satisfied that the claimed estoppel by judgment is not sufficient to establish total disability for the period of time covered by this action. The ultimate fact in the previous suit as to disability was total disability during the period for which indemnity was sought. The ultimate fact here is total disability for an entirely separate and definite period of time. That question was not in issue, and could not have been litigated in the former action. Each case stands upon its own bottom.

The other question in the case urged by appellee is that the court, regardless of any question of estoppel, should have directed a verdict for him for the full amount claimed. The questions here involved seem to us to be peculiarly fact questions for a jury. Whether appellee as a result of the injury had suffered continuous total disability, preventing him in the locality of his profession "from performing any and every duty pertaining to his occupation" during the period of time for which indemnity is asked, involves many questions. The fact that he may possibly recover more for the disability caused by the injury to the hand than if he had lost the entire hand is of no moment in the construction of this contract of insurance, and is not material in this case. There is no maximum placed on the company's liability for continuous total disability. It so wrote the contract. In view of our conclusion that it was error to direct a verdict for appellee and the probability of another trial, we refrain from expressing any opinion or discussing in any way the evidence in the case. For the same reason, any discussion of the proper interpretation of the contractual definition of "total disability" would be inappropriate. We are satisfied that under the record here presented both motions for an instructed verdict should have been overruled and the case submitted to the jury (appellant in its motion having reserved said right). The judgment is therefore reversed, and the case is remanded for proceedings in harmony with this opinion.

Reversed and remanded.