George H. Kurth, Appellee, v. Kansas City Life
Insurance Company, a Corporation, Appellant.

No. 44867.

October 24, 1939.

Cook & Balluff, for appellant.

Bush & Bush, for appellee.

MILLER, J.—The controversy involved herein is a continuation of one which was adjudicated by this court in 1931. For our former opinion, see Kurth v. Continental Life Ins. Co., 211 Iowa 736, 234 N. W. 201.

In our former opinion, we pointed out that the suit is based on a life insurance policy containing a provision for the payment of one tenth of the face of the policy each year and the waiver of premiums, during such time as the insured should furnish satisfactory proof that he has been wholly disabled by bodily injury or disease for a period of not less than sixty days, that such disability is presumably permanent and that he will be wholly and continuously prevented thereby from pursuing any gainful occupation. The provisions of the policy are set out verbatim in 211 Iowa at page 737, 234 N. W. at page 201, of said opinion. In construing such provisions, this court states in 211 Iowa at page 738, 234 N. W. at page 202:

"There appears to be no ambiguity in these provisions, and they should cause no particular difficulty in construing them, except as respects the starting point. As said before, the contingency insured against is: that the insured has been wholly disabled for a period of not less than 60 days, and that such disability so suffered is presumably permanent, and that he will be wholly and continuously prevented thereby from pursuing any gainful occupation. This may be clarified by analysis in this manner: If the insured has been wholly disabled (a) for a period of not less than 60 days, and (b) such disability as has existed for not less than 60 days is presumably permanent, and (c) the insured will be wholly and continuously prevented by the disability that has existed for a period of not less than 60 days, which disability is presumably permanent, from pursuing any gainful occupation. It would thus appear that these three separate factors were combined, and that *upon the combination only* are the benefits to accrue."

At page 739 of 211 Iowa, 234 N. W. at page 202, this court also states:

"The words, 'permanently' and 'continuously,' standing alone, would imply that the disability was a lasting and absolutely fixed condition; but when these words are taken in connection with the language used in other provisions of the con-

tract, the only fair construction to be placed on such words is, not that the disability which has existed during 60 days must exist forever, but that such disability has existed for a period of not less than 60 days and by a fair presumption will continue for a future period."

The provisions of the policy in reference to payment of disability benefits after the disability contemplated by the policy has been established, are as follows:

"After accepting proofs of disability under this policy the company shall have the right at any time thereafter, but not more frequently than once a year, to require proof of the continuance of such disability; and if the insured shall fail to furnish such proof, or if it appears that the insured has so far recovered as to be able to engage in any gainful occupation, the company's obligation to pay the premium and installments shall cease."

In construing the provisions last above quoted, this court states in 211 Iowa at page 739, 234 N. W. at page 202, as follows:

"By the insertion of the foregoing clause in the contract, it is obvious that the disability by which the benefits may accrue and become obligations of the company is not absolutely expected to be absolutely permanent and absolutely continuous and to absolutely prevent the insured during his after lifetime from engaging in any gainful occupation; because this insertion was intended to govern when and if such presumably permanent disability might be removed by some means or other, and the company desired what benefits it might have by reason of such removal."

On the former trial before this court, appellant relied upon the decision of this court in the case of Hurley v. Bankers Life Co., 198 Iowa 1129, 199 N. W. 343, 37 A.L.R. 146. In commenting upon such decision, this court states in 211 Iowa at page 741, 234 N. W. at page 203, as follows:

"It will be noticed particularly in the Hurley case that the *time element* is *not* a factor,—that is, the *continuance of the disability* in the future. To become entitled to the waiver

of premiums in that case, the insured must perforce become totally, permanently, and incurably disabled, and, by the very language, precluded from any possibility of a recovery in any degree. * * * In the case at bar, this court is not confronted with the time element, *except as it applies to the period for which the claim is being made*; and *we must hold* that the disability suffered by the appellee is affected *only* by the time *between the starting or commencement of the disability and the date the decree was rendered in his favor* by the lower court.''

Again at page 749 of 211 Iowa, 234 N. W. at page 207, this court states:

''It is plain that the established total disability for a period of not less than 60 days is required by proof, but also the absolute permanency and *continuance of such disability must be established by later proofs*; that, upon the furnishing of the first proof, the insured is entitled to a *temporary* grant of benefits promised.''

The opinion of this court on the first appeal affirmed a decree which determined that, under the provisions of the policy, the plaintiff was entitled to waiver of the premium due July 9, 1928, and the sum of $500, one tenth of the face of the policy accruing December 17, 1928. The petition of plaintiff in this case seeks recovery of additional sums of $500 claimed to have become due on December 17th in the years 1933, 1934, 1935, 1936 and 1937, with interest to the date of judgment and waiver of annual premiums which would otherwise have been due on July 9th of each of said years, after 1933.

The pleadings in this case are quite voluminous. Some matters are controverted in the pleadings, but are not controverted in the testimony and proof. In order that the apparent issues raised by the pleadings may be disregarded and the actual issues be more clearly understood, we undertake to state first the matters about which there is no dispute in the record.

The policy here sued upon was originally issued to the plaintiff by the First National Life Insurance Company of Pierre, South Dakota, under date of July 9, 1923. It provided for 20 annual premiums of $188.95 each, was in the principal sum of $5,000 and contained the provisions in reference to

waiver of premium and total disability benefits above referred to.

On April 3, 1924, the plaintiff's policy was reinsured by the Continental Life Insurance Company of St. Louis, Missouri, and an assumption of policy liability was endorsed by such company upon plaintiff's policy.

On March 8, 1928, while plaintiff was employed as manager of a lumber yard at Lennox, Iowa, he received an accidental injury by falling backwards from a runway in a lumber shed, a distance of 7 or 8 feet. The circumstances of this original injury are again fully recounted in the record herein. The testimony is substantially the same as that offered at the first trial, and, as the facts are quite fully set forth in the former opinion of this court, it is not necessary for us to repeat them.

Plaintiff brought suit against the Continental Life Insurance Company, which had reinsured his policy, and recovered judgment and decree, which was affirmed by this court. Such decision adjudicated that the policy was in force at the time of his injury, that, as a result of the injury he had sustained disability within that contemplated by the provisions of the policy which entitled him to the sum of $500 on December 17, 1928, and reimbursement for the annual premium, paid after his injury, which the company should have waived because of such disability.

The judgment was paid and the company endorsed waiver of premium upon the policy in accordance with the decree. Plaintiff was also paid annual installments of $500 claimed as of the dates of December 17, 1929, 1930, 1931 and 1932, and the payment of premiums was waived for those years. On June 9, 1933, the Continental Life Insurance Company forwarded blanks to the plaintiff for filing of claim for continuation of total and permanent disability benefits under his policy, asking for a statement by claimant and his attending physician, and for a return of the same in order that the claim committee might have ample time to consider the case before July 9, 1933, which was the due date of the annual renewal premium. The blanks were filled out and returned by plaintiff, and on July 13, 1933, the Continental Life Insurance Company wrote plaintiff as follows:

"This is to advise that we are today waiving payment of the 1933 annual renewal premium due under your Policy No. FN16169, thereby placing this policy in force to July 9, 1934."

Thereafter, in September, 1933, plaintiff was examined by a number of physicians at the request of the company, and, on December 18, 1933, the company wrote the plaintiff as follows:

"Concerning your claim for Disability Benefits under your Policy No. FN-16169, recent investigation made by this Company, discloses that you are no longer so totally and permanently disabled as defined in your policy contract and this is to give you formal notice that your claim is therefore cancelled. We are discontinuing the payments under this policy and it will be necessary that you resume the payment of premiums, commencing with the premium due July 9, 1934 under this policy.

"This is in no sense a repudiation of your policy, on the contrary, we recognize the existence and continuance of your policy."

No further payments have been made to plaintiff and no further waiver of premium endorsements have been executed in reference to his policy. The company became financially involved, was placed in the hands of a receiver, and, on July 25, 1936, the circuit court of the city of St. Louis adjudged the said Continental Life Insurance Company was insolvent and that a continuation of certain orders of rehabilitation theretofore entered by the court would be futile. It terminated such orders and authorized, directed and empowered the superintendent of the insurance department of the State of Missouri to settle and wind up the affairs of the company. On the same day, to wit, July 25, 1936, plaintiff's insurance policy was reinsured by the Kansas City Life Insurance Company, appellant herein, which company executed a certificate of assumption whereby it assumed and agreed to perform the obligations of the Continental Life Insurance Company under said policy, subject to the provisions and conditions of the contract of sale and reinsurance. This suit was instituted in the district court of Scott county, Iowa, against both the Continental Life Insurance Company and the appellant, Kansas City Life Insurance Company, but, by reason of the insolvency and dissolution

of the Continental Life Insurance Company, and the reinsurance of its obligations by the appellant herein, we will treat the appellant as though it were the only insurance company involved.

The petition, as amended, alleges, in addition to many of the facts herein reviewed which are undisputed, that the plaintiff has been disabled within the meaning of the total permanent disability provisions of the policy continuously since March 8, 1928, and, notwithstanding such disability, has been refused payment of the indemnity falling due in December, 1933, and December of each year thereafter. Plaintiff also alleges that the denial of liability by the Continental Life Insurance Company, under date of December 18, 1933, was in violation of the provisions of the policy, and in violation of the terms of the decree, which was affirmed by this court in 1931. Plaintiff prayed that the court construe its former decree and the policy referred to therein and determine that appellant's obligation to pay the premiums and installments has not ceased; that appellant company be ordered to endorse waiver of premium upon the policy, and that appellant be ordered to pay the sum of $500, as the same became due on December 17, 1933, 1934, 1935, 1936 and 1937, with interest thereon, and that the decree also bind appellant to pay the sum of $500 each year thereafter during the life and continued disability of plaintiff and enter a specific waiver of premium on said policy on or before July 15th of each year until and unless appellant company require plaintiff to furnish proof of the continuance of his disability and plaintiff fail to do so or appellant cause it to appear that plaintiff has so far recovered that he is able to engage in some gainful occupation and that the court retain jurisdiction of the cause for the purpose of making such further orders as equity may require during the life of plaintiff and the continuation of his disability.

The answer of the appellant company admitted some of the allegations of the petition and denied others and prayed that the petition be dismissed. The real issues in this case are the following: (1) Whether plaintiff was *continuously* disabled within the meaning of the total permanent provisions of the policy; (2) whether the decree, which this court affirmed in 1931, made any adjudication beyond the date of judgment;

(3) whether the court in the present suit could adjudicate future liability of appellant to the plaintiff and whether it was proper for the court to retain jurisdiction of the cause during the lifetime and continued disability of the plaintiff to enter such future orders as equity might require.

The trial court decided all of these issues in favor of the plaintiff and entered decree accordingly. Appellant has appealed and, as this case is in equity, it is now triable in this court de novo, both as to the facts and the law.

I. On the first issue, whether or not the plaintiff has been continuously disabled within the contemplation of the policy here sued upon, the record is voluminous, to say the least. The scope of the inquiry in the trial court started with the original injury of March 8, 1928, and included testimony regarding plaintiff's physical condition right up to the minute that the evidence was closed. Plaintiff's witnesses included, in addition to plaintiff, his wife and daughter, and five licensed chiropractors, all of whom appear to be connected with the Palmer School of Chiropractic, and one of whom is president of that institution. The defendant called an X-ray specialist and six physicians and surgeons. The testimony of these witnesses covers 156 pages of the abstract. For the purposes of this opinion, we can do no more than present a general summary or review of the principal facts testified to by the witnesses for each side.

Plaintiff's witnesses testified to the following facts: Plaintiff can only go about on crutches; his left leg is paralyzed and useless; his right leg buckles on him at times so that he must always be on crutches; he has more or less continuous pain in the lumbar region of his back; he has severe headaches; his condition has not changed since the first trial; his condition is thought to be due to the fact that, at the time of his fall on March 8, 1928, he must have suffered a hemorrhage into the substance of the spinal cord which must have produced a blood clot. This blood clot, after organization through coagulation, gradually dissolved, leaving mineral deposits and scar tissue, which impair the functions of the nerves by causing pressure on them. The principal nerves affected are those pertaining to the left leg, particularly from the knee down. Plaintiff has subluxation of the lumbar, upper lumbar and cervical vertebrae. The headaches, of which the plaintiff now complains, are appar-

ently due to emotional crises and physical exertions. He is totally disabled because any continuous strain brings on the headaches. The condition of the leg itself would not disable him from work, but any steady, close attention, mental work, would produce headaches and prevent plaintiff from doing any work that required close application and steady concentration. The plaintiff's condition is permanent and there is no cure for it.

The testimony of plaintiff's witnesses is sharply controverted in its entirety by the witnesses for defendant. Defendant's witnesses interpret the various X-rays as showing no misalignment, rotation, luxation or subluxation of the vertebrae of plaintiff's spine. Plaintiff's history shows that he at no time had any difficulty in his urinal habits. That is impossible in case of paralysis from the hips down, as described by plaintiff immediately following his injury. Defendant's doctors performed numerous tests in the course of various examinations during the years 1930, 1933, 1934, 1937 and 1938. As a result of such tests, all of the doctors testify that there is no evidence of paralysis in plaintiff's left leg. In the course of examination, he did not cooperate. When he was unable to move his leg, it was because he made no effort to move it. The temperature of the two legs is the same. Such atrophy as appears in the left leg is due to disuse, not paralysis. There is no difference in the flaccidity of the two limbs. The condition of the skin on the left leg is similar to that on the right, and is not the condition that would be present if plaintiff was suffering from paralysis. Plaintiff's claim that he cannot walk is a conscious, deliberate fraud on his part. He has no physical disability. He could walk if he would try, and could engage in a gainful occupation if he would make the effort. There is no dependable evidence of injury to his head that would cause him to have headaches. In the course of examining him while blindfolded, he was induced to stand on both feet without support of crutches, an act which he contended he could not perform. There is no evidence of a blood clot having been formed in the spinal cord. Plaintiff's reflexes are normal, a situation which would not exist if he were suffering from paralysis. Plaintiff has a pretty fair tone in the muscles of his left leg. This would not be true if he had paralysis. The

nerves of his left leg are functioning. He was able to bend his left thigh on the abdomen and extend his left leg with the thigh in walking. Plaintiff's ability to work can only be determined after he tries to. What he thinks he can do, he can do much better than what he thinks he cannot do. While there are symptoms of traumatic neurosis or neurasthenia in the complaints as to headaches and loss of use of the leg, there is too much falsification about them for them to qualify as symptoms of neurosis. The tests in reference to the condition of the left leg below the knee indicated that plaintiff was not cooperating and his statements could not be true. Several doctors testified that they saw plaintiff make use of his left leg in the course of the examinations, and one testified that he saw plaintiff use his left leg while walking on the street. All testify to the effect that plaintiff's complaints are not made in good faith, that they are false, that plaintiff has no physical or mental disability, is not disabled from work, and that the only thing that prevents him from engaging in a gainful occupatin is the fact that he does not want to.

At first impression, it might appear that the wide difference of opinion between the two groups of experts who testified in this case presents a situation that defies explanation. We do not so read the record. One apparent explanation might be that the witnesses represent different schools of thought. While this may have some significance, it is in no way controlling in our judgment. As we read the record, the thing that accounts for most of the variation between the expert witnesses is the fact that one group was convinced that plaintiff's complaints are bona fide and asserted in good faith, while the other group, by reason of the tests which they made, were unanimously of the opinion that many, if not all, of plaintiff's complaints are false and willfully made with a fraudulent intent.

One of defendant's doctors frankly states: ''I think many of Mr. Kurth's statements to me are false. My conclusion would be the other way if his statements to me regarding his sensations and his paralysis were true, and I was satisfied they were true.'' And again: ''Headache is a subjective symptom, and may exist without an objective symptom. By subjective I mean something that only the patient himself can

tell you. By objective I mean something a third person can see or feel.'' The symptom of headaches is recognized by plaintiff's doctors as being more important in determining whether or not plaintiff is totally disabled than the condition of the leg, about which most of the testimony was developed.

■ In determining whether or not plaintiff was totally and continuously disabled for the period for which he seeks the payment of disability benefits and the waiver of premiums, it is first necessary to determine whether or not the plaintiff's complaints are bona fide and made in good faith, or false and made in bad faith. The trial court, with the witnesses before him, was obviously in a better position to determine this question than this court, which is limited to the printed record. The record shows that, toward the close of the evidence, the plaintiff was induced by his counsel to walk across the room so that the judge might see at first hand, what the witnesses for several days had been describing from the witness stand. He was also asked to stand without the aid of crutches, and the record shows that, when he undertook so to do, he fell. The trial court saw him walk and saw him fall. All we know is that he did walk and did fall. The trial court determined that plaintiff's complaints are bona fide and made in good faith. There is substantial evidence to support this finding. Had the trial court determined otherwise, there would be ample evidence to support such finding. Because of the fact that the trial court was in a far more favorable situation to determine the good faith and integrity of the plaintiff, we do not feel that, under the peculiar facts and circumstances shown by the record herein, we would be justified in disturbing his finding on that issue. Accordingly, we hold that the decree of the trial court, insofar as it determines that plaintiff was totally disabled, within the contemplation of the provisions of the policy here sued upon, during the period extending from July 9, 1933, to December 17, 1937, and entitled to waiver of premiums falling due within that period and the payment of $500 per year disability benefits accruing within that period, must be affirmed.

■ II. The other issues decided by the trial court are definitely related to each other, and will be considered together. As heretofore stated, these issues are the following: Whether

the decree, which this court affirmed in 1931, made an adjudication beyond the date of judgment; whether the court in the present case could adjudicate future liability of appellant or retain jurisdiction of the cause, during the lifetime and continued disability of the plaintiff, for the purpose of entering such further orders as equity might require. We are of the opinion that the trial court erred in deciding these issues in favor of the plaintiff.

A somewhat analogous situation is presented by the case of United States Fidelity & Guaranty Co. v. McCarthy, 8 Cir., 33 F. 2d 7, 70 A. L. R. 1447. Said decision was made on appeal from the district court for the southern district of Iowa. The appellee McCarthy had a policy of accident insurance with the appellant company, providing for indemnity at the rate of $250 per week during total disability and a lesser amount for partial disability. Appellee was a surgeon. He received an injury on December 6, 1922, resulting in injury to the median nerve of his right hand, which disabled his right hand and formed the basis for his claim that he was totally disabled from performing the duties of a surgeon. The company paid him weekly indemnity for one year amounting to $13,000. It then denied further liability, suit was brought and judgment recovered for $26,077.69, based on continuous disability for the period from December 6, 1923, to October 22, 1925. This judgment was paid without appeal therefrom. Thereafter, a second suit was brought and judgment recovered for $32,641.55, representing indemnity payments for the period October 22, 1925, to February 23, 1928. In entering such latter judgment, the district court sustained appellee's motion for a directed verdict. One of the grounds for sustaining the motion was that the first judgment, from which there was no appeal, constituted an adjudication in reference to the period for which payments were ordered by the second judgment. On appeal, the judgment was reversed. The court, speaking through Judge Kenyon, states in 33 F. 2d at page 11, 70 A. L. R. 1447, as follows:

"The matters in issue determined and ended in the former case were: The issuance of the policy, payment of the premium, occurrence of the accident, the injury to the hand, that appellee was totally disabled from such injury under the terms of the policy for a period of time from December 6, 1923, up to the

22d day of October, 1925. * * * The evidence introduced in the former case did not establish permanent total disability, nor that total disability would continue over the period for which indemnity is claimed in this suit. The question litigated was continuous total disability during the period for which recovery was sought. The period of time covered in this case was then in the future. As the burden there was upon appellee to show continuous total disability for the period involved, the same burden rests upon him to show such continuous total disability for the period here involved, and the right under the terms of the policy is in the appellant to contest the question of such total disability for every period of time provided by the terms of the policy."

It will be noted that the court recognized that, before there could be an adjudication of liability as to a given period of time, it was necessary that there be evidence establishing such disability for that specific period. In speaking on this question, the court makes an observation in 33 F. 2d, at page 13, 70 A. L. R. 1447, which might have some significance under the record herein, to wit:

"Disability is not entirely a physical matter. Will power and condition of the mind enter into it. A person may be disabled today, and in a year from now, without any change in the physical condition, not be disabled."

It also is apparent, from reading the opinion in that case, that the court determined that the first judgment could not constitute an adjudication as to the period covered by the second judgment because, at the time that the first judgment was entered, the claim for indemnity based upon the second period had not yet accrued. At page 13, of 33 F. 2d, 70 A. L. R. 1447, the court states:

"The ultimate fact in the previous suit as to disability was total disability during the period for which indemnity was sought. The ultimate fact here is total disability for an entirely separate and definite period of time. That question was not in issue, and could not have been litigated in the former action. Each case stands upon its own bottom."

The McCarthy case involved a policy of accident insur-

ance, but the rule applied in that case has been recognized as applicable to the disability provisions of a life insurance policy. An illustrative case is that of Summers v. Prudential Ins. Co., 319 Pa. 270, 179 A. 78, 79. In that case, the plaintiff sought waiver of premium and monthly disability payments claimed to be due under a policy of life insurance which afforded such protection in the event of continuous total and permanent disability. In passing upon the accrual of the cause of action, the court states:

"It is apparent that plaintiff's rights to the installments accrued from month to month, and that upon defendant's refusal to pay any one of them when due he could institute suit for that payment. Neither a single default nor a number of defaults would amount to a breach of the entire contract. Each default would only affect the rights and liabilities of the parties with respect to the specific payment involved. Thus it is clear that, at the institution of the present suit, plaintiff's cause of action comprised only the payments which had already become due; for the payments accruing after that time plaintiff may maintain another suit. The same is true with respect to the payments of premiums made after suit was brought. That the recovery must be so confined is conclusively established by the decided cases: B. & O. Employees' Relief Assn. v. Post, 122 Pa. 579, 15 A. 885, 2 L. R. A. 44, 9 Am. St. Rep. 147; Robinson v. Exempt Fire Co., 103 Cal. 1, 36 P. 955, 24 L. R. A. 715, 42 Am. St. Rep. 93; Commercial Cas. Ins. Co. v. Campfield, 243 Ill. App. 453; Bonslett v. N. Y. Life Ins. Co. (Mo. Sup.) 190 S. W. 870; Cardwell v. Employers' Liab. Assur. Corp., 105 W. Va. 197, 141 S. E. 789."

Another case, involving analogous provisions of a life insurance policy, is that of Black v. Jefferson Standard Life Ins. Co., 171 S. C. 123, 171 S. E. 617, 619, wherein the court states as follows:

"This was not a liquidated demand, one which the circuit judge could say was fixed and would continue during any given time, whether up to the date of the trial or during the entire life of the insured. The development of medical and surgical science in the past few years has been such that many persons afflicted with apparent total disability have been restored to

normal health. The provision in the policy was to permit the insurance company to avail itself of any benefit which might be derived from this provision should the circumstances of the individual case permit. We are therefore convinced that the recovery of disability payments should have been limited to that period of time between February 4, 1931, when the proofs of disability were filed, to April 30, 1931, when the action was commenced.''

All of the cases, so far quoted from, were actions at law, whereas this suit is in equity. A somewhat different rule applies in equity. This is recognized by the South Carolina court in the case last quoted from, the court stating as follows:

''To sustain the position taken by the circuit judge, the respondent relies upon the case of Puckett v. Smith, 5 Strob. 26, 53 Am. Dec. 686. The doctrine announced in that case has been sustained in the later case of Southern Railway Co. v. Gossett, 79 S. C. 372, 60 S. E. 956, to the effect that, where the damage is continuous, a court of equity may assess the damage up to the time of the *trial*. This is a perfectly reasonable rule in equity, and contemplates a final determination of the controversy between the parties by the decree. One reason for the rule is that another suit, one for the recovery of damages from the commencement of the suit to the date of the decree, will be avoided.''

The equity rule in Iowa is recognized by this court in the case of Gribben v. Clement, 141 Iowa 144, at page 150, 119 N. W. 596, wherein the court states:

''The old rule which required an action to be abated, merely because prematurely brought, has been borne down by the trend of modern decisions. Under the later decisions, if the plaintiff's cause of action is complete and mature before it comes to a *hearing,* he will ordinarily be permitted to try it out on its merits.''

Many other authorities could be cited, but, as the rule is definitely established, this opinion should not be further prolonged by such discussion. This is particularly true since the opinion in this court, on the first appeal, is binding upon us, not only under the doctrine, stare decisis, but also under

the rule, res adjudicata. As heretofore pointed out, in the first opinion, this court states that it was not confronted with the time element ''except as it applies to the period for which claim is being made,'' and we held that the disability suffered by the plaintiff, ''is affected only by the time between the starting or commencement of the disability and the date the decree was rendered in his favor.'' We further held that ''continuance of such disability must be established by later proofs'', and that the furnishing of the first proof merely entitled plaintiff to ''a *temporary* grant of benefits promised.'' We hold that the language used in the first opinion definitely established that, at the time of the entry of the first decree, the only claims that had accrued were those pertaining to waiver of premium due July 9, 1928, and disability benefit of $500, accruing December 17, 1928. As those were the only claims that had accrued when the first decree was entered, they were and could be the only matters adjudicated by the first judgment and decree.

While the language of the trial court's decree herein is subject to a different interpretation, the form of judgment entered accords with our present holding. Trial was had herein in January, 1938, at which time the cause was submitted and taken under advisement, with consent of both parties to render decision thereafter, either in vacation or at any subsequent term of court. At the time that the trial was completed and the evidence closed, the last premium unpaid was that falling due July 9, 1937, and the last disability payment accruing was that falling due December 17, 1937. The court's decree was not entered until December 23, 1938. If the court had the power to enter judgment for benefits accruing after the close of the evidence, it would have passed upon the premium due July 9, 1938, and the disability benefit to be claimed on December 17, 1938. The court did not undertake to enter any judgment in reference to the 1938 premium or the 1938 disability benefit. We hold that it could not adjudicate these matters because the claims in reference to them had not accrued when the evidence was closed. We also hold that it was error for the court to purport to retain jurisdiction of this cause for the purpose of adjudicating the rights and liabilities of the parties, which might accrue subsequent to the date of the trial herein.

By reason of the foregoing, the decree of the trial court

258

is affirmed insofar as it adjudicates that plaintiff was totally disabled, within the contemplation of the policy, during the period between July 9, 1933, and December 17, 1937, and that appellant company was obligated to waive the premiums falling due on the policy during that period, and to pay the annual installments of $500 each accruing on December 17th of each year during such period. The decree is reversed insofar as it undertakes to adjudicate that the former judgment and decree, affirmed by this court in 1931, adjudicated the rights of the parties as to periods subsequent to the date of the first trial. The decree is also reversed insofar as it purports to adjudicate future liability of the parties and undertakes to retain jurisdiction for the purpose of making further orders in reference thereto. The cause is remanded for the entry of a decree in conformity with this opinion. In the event either of the parties so desire, upon proper application being made to this court, decree will be entered here.—Affirmed in part; reversed in part.

MITCHELL, BLISS, SAGER, HALE, and STIGER, JJ., concur.