## PRUDENTIAL INS. CO. OF AMERICA v. BATTERSHILL.

No. 11461.

Circuit Court of Appeals, Fifth Circuit.

April 5, 1946.

L. S. Julian, of Miami, Fla., for appellant.

R. H. Ferrell, of Miami, Fla., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

WALLER, Circuit Judge.

The policy upon which this suit was brought provided that in the event the Insured, before reaching the age of sixty, should be rendered "wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his lifetime" the Company, upon receipt of due proof of such disability, would waive payment of any premium the due date of which should occur after the receipt by the Company of said proof of such disability, and pay Plaintiff $200 per month during the continuance of such disability.

The policy stated that:

"Notwithstanding the acceptance by the company of proof of total and permanent disability, the Insured, upon demand by the company and from time to time, but not oftener than once a year after such disa-

bility has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he actually continues in the state of disability defined above; * * *"

In 1932 the Company began to pay the Insured monthly disability benefits and to waive payment of premiums, but on June 23, 1944, it advised him that it would no longer continue said benefits, and that if he desired to keep said policy in force the premium becoming due on February 17, 1945, would have to be paid.

The policy was in force when suit was filed by Insured on December 4, 1944, to recover for six monthly payments of $200 each, beginning on July 1, 1944, to date of suit, together with an attorneys' fee, listed in his bill of particulars at $2,000.

Insured alleged that:

"From the time when the defendant in the winter of 1932 admitted plaintiff to be wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value, he has continued to be so disabled and he will be so disabled for the remainder of his life * * *."

The Company in its answer denied that Plaintiff became totally and permanently disabled in the winter of 1932 and that it then, or at any other time, had admitted him to be totally disabled in the sense described and provided in the policy. It admitted that as of January, 1932, it began to pay monthly disability benefits to the Plaintiff and to waive premiums but alleged that it gave the Plaintiff the benefit of the doubt and made the payments and waived the premiums "strictly on a temporary basis." It denied that the Plaintiff ever was, in 1932 or since, or that the Plaintiff will be, "wholly, continuously and permanently un-able to engage in any occupation or perform any work for any kind of compensation of financial value for the remainder of his life." It denied that any payments were due or that premiums should be waived.

On these issues the case came on for trial. Plaintiff testified that he was suffering from "intestinal trouble, weakness, nervousness, underweight; mostly just general weakness, just inability"; that he was forty-three years old; had attended Duke University three years, and Universi-

ty of Virginia for a short time, after leaving which he had engaged in the road construction business with his father and was so engaged from 1923 until the latter part of 1930; that most of his work was bidding on construction and supervising the same; that he drove an automobile; that he had done some quail and duck hunting; went swimming in the surf; had been to the races a number of times; had been squirrel hunting; but that from the time he had filed the claim for total and permanent disability up to the time of the trial he had not been able to do any work; that his condition had become worse. He also testified that he had been examined a number of times since 1932 at the request of the Company. His wife testified merely that her husband had not been able to work since 1931.

The Plaintiff rested at the conclusion of the testimony by himself and his wife. Whereupon the Court, after a conference with counsel, announced that it would be its ruling that the Company could not offer evidence to show the present physical condition of the Plaintiff because "the Insurance Company was obligated under the terms of the policy to proceed in some manner other than merely a discontinuance of benefits to the insured, to negotiate with the insured, or it could come into this Court or into the State Court through the declaratory judgment process and have determined whether or not it was obligated to continue to pay these benefits."

It was then agreed between Court and counsel that the Defendant would proffer the testimony of the physicians whom it had intended to put on, and that the Court would hold the proffered evidence inadmissible, and that it would not be necessary actually to put these experts on the stand. Accordingly, the testimony of Dr. M. Jay Flipse and Dr. James L. Anderson was proffered to the effect that each of the physicians had lately examined Plaintiff and that for reasons stated he was capable of engaging in an occupation or performing work for compensation, and was not totally and permanently disabled. The Court held that this testimony was inadmissible, not because of lack of qualification of the experts, but because the Court thought the Defendant had not laid the proper predicate for the admission of such testimony. The idea of the Court is more fully expressed in its statement to the

jury upon directing a verdict for the Plaintiff, to wit:

"Now, this Court has held that, while the Insurance Company has the right to have a determination of the question as to whether or not the disability of the plaintiff has ceased, that its right is not the one that it pursues. This Court has held that the Insurance Company has no right to take what is known in common insurance parlance as the Starvation Rule for that determination. It could have taken this matter up with the plaintiff and his physician and their physicians and as a result of consultations, conferences or other things gotten together with the plaintiff and made some determination of it that was agreeable to them all, or the Insurance Company had the right, and it has the right at all times, to go into Court, either in the State or Federal Court, and have the matter reviewed and determined if they are unable to agree with plaintiff. This Court has merely held in this case that the right does not exist in the Insurance Company on its own volition and its own account and at its own will to make the decision to cease the payments and to force the plaintiff into a determination of that question, in which suit the defendant has the right to a de novo determination of the question of the plaintiff's physical disability. That does not stand out here as it did in some of the other cases we tried. Defendant's counsel thinks I am wrong in my interpretation of the law, but under the law, gentlemen of the jury, it is my province to instruct you that the plaintiff having shown that benefit payments were begun back in 1932 and were arbitrarily discontinued by the Insurance Company in 1944, that the Insurance Company is liable in this case for the six benefit payments that defendant failed to make, and is liable for a reasonable attorney's fees to plaintiff's attorney, and that the Insurance Company has offered no legal defense which is sufficient for its discontinuance of the payment of those benefits."

▆▆▆ That ruling was error. The Defendant had a right to a determination of the question of the Plaintiff's current physical or mental condition under the issues in this case. The fact that the Defendant had paid disability benefits and waived payment of premiums for a period of ten or twelve years might well create an inference of total and permanent disability during the time the payments were made that would require the Defendant to rebut, or mayhap place the burden of proof on the Defendant (a question which it is not necessary for us to decide here), but it would not be a bar to the introduction of rebuttal evidence showing, or tending to show, lack of such disability or of its continuance. That the making of these payments for such a period might justify the jury in drawing an inference of total and permanent disability, and its continuance, would not justify the holding that the payment of disability benefits for a time is a bar to a cessation of payment of those benefits in the event the Insured should recover from such disability to the extent that he was able to perform work for any kind of compensation of financial value. One way to show whether or not Insured's condition has changed from that existing between 1932 and 1944 is to show what his present condition is. The fact that one could not perform work for compensation in 1932 creates no irrefutable presumption that he cannot do so in 1945. A decree of the Court adjudging total and permanent disability is ordinarily not prospective, but merely adjudicates the question of disability at the time of filing the complaint. As was said by the writer, as a District Judge, in the case of Travelers Insurance Company v. Wechsler, D.C., 34 F.Supp. 721, 723:

"A declaratory decree could settle nothing more than the present rights of the parties in this case. The insured's physical condition might change for better or worse before the ink is dry on the Court's decree. The Court cannot engage in diagnostic prophecy as to an alleged disability that is not apparent or patent, the totality and permanency of which the complaint denies."

In Mutual Life Insurance Company of New York v. Moyle, 116 F.2d 434, 435, Judge Parker, speaking for the Fourth Circuit, said:

"We think it clear that all that is in controversy is the right of the insured to the disability payments which had accrued at the time of suit. The company is obligated to make these payments only so long as the condition evidencing total and permanent disability continues; and, as this condition, theoretically at least, may change at any time, it is impossible to say that any controversy exists as to any disability payments except such as have accrued. New

950

York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971; New York Life Ins. Co. v. Stoner, 8 Cir., 92 F.2d 845; United States Fidelity & Guaranty Co. v. McCarthy, 8 Cir., 33 F.2d 7, 13, 70 A.L.R. 1447; Metropolitan Life Ins. Co. v. Hobeika, D.C., 23 F.Supp. 1; Small v. New York Life Ins. Co., D.C., 18 F.Supp. 820. Such a case is to be distinguished from one where the controversy relates to the validity of the policy and not merely to liability for benefits accrued; for, in the latter case, the amount involved is necessarily the face of the policy in addition to the amount of such benefits. See Stephenson v. Equitable Life Assur. Soc., 4 Cir., 92 F.2d 406; Bell v. Philadelphia Life Ins. Co., 4 Cir., 78 F.2d 322; Pacific Mutual Life Ins. Co. v. Parker, 4 Cir., 71 F.2d 872."

The making of disability payments by the Company would no more render the Insured's physical condition static than would a declaratory decree of the Court.

■ An inquiry may be had whenever the issue is made at any succeeding trial as to the present extent, or lack, of disability of the Insured, in the usual case, and in the absence of policy provisions to the contrary.

■ The policy involved here states that notwithstanding the acceptance by the Company of proof of total and permanent disability, the Insured may be called upon from time to time (but not oftener than one a year two years after disability) to furnish due proof of his actual continuance in the state of disability defined in the contract, in order that the Company may verify whether or not the disability is permanent or temporary, and in case of failure to furnish such proof no further premiums shall be waived and no further payments made. These provisions were inserted in the contract for the benefit of the Company and it could, therefore, waive them. They, moreover, show clearly that the questions of disability and its continuance are to be open questions. There is no basis in the policy for the contention that the payment of disability benefits and the waiver of premium for any length of time shall foreclose the Company from questioning the actuality or permanency of the alleged disability. We find no provision in the insurance policy or in the law that requires the Insurer to take "this matter up with the plaintiff and his physician and their physicians and as a result of consultations, conferences, or other things gotten together with the plaintiff and made some determination of it that was agreeable to them all, or * * * to go into Court, either in the State or Federal Court, and have the matter reviewed and determined if they are unable to agree with plaintiff," as a condition precedent to its right to show, when sued, that the allegations of the Plaintiff that he is totally and permanently disabled are not then true.

The lower Court was in error in its holding and in refusing to admit the testimony offered by the Defendant. The case is reversed and remanded for a new trial.

Reversed and remanded.